# JOHN G. DESHLER
## *v.*
## CYRENIUS BEERS.

1. FACTOR — *degree of care or diligence required.* The law holds a consignee, in the conduct of the business of the consignor, to the same degree of care and diligence which a prudent man would exercise in the management of his own business.

2. SAME — *liable in case of negligence.* Where grain is consigned to a commission merchant for sale, without specific instructions as to the terms upon which it may be disposed of, and the consignee sells in such manner that by the contract he is entitled to the money on delivery, it is his duty to obtain the money before he allows the property to go beyond his control; and if, through any negligence or carelessness on the part of the consignee, or as a matter of favor to the purchaser, he is allowed to take into possession and remove the property without paying for it, the consignee is immediately liable to the consignor for the price.

3. Or, if, upon the removal of the property in such case, by the purchaser, the consignee should recover the possession by replevin, and sell it again, and thereby becomes involved in litigation with third parties to whom the first purchaser had pledged the property, the consignee, through whose neglect such purchaser obtained the possession without making payment, may be compelled to account to the consignor for the proceeds of the second sale.

4. DEMAND — *when necessary.* It seems, the consignor must make a demand of the consignee, before instituting suit to enforce the liability of the latter in the

Deshler *v.* Beers.

cases mentioned, unless the consignee delays for an unreasonable time advising the consignor of his action, or denies his right in the premises.

5. CUSTOM — USAGE — *who must take notice.* If there be a custom or usage, of long standing, general and uniform, at the place to which the property is consigned for sale, controlling the time within which payment may be made upon a cash sale, the consignor, it seems, will be bound to take notice of it; and his ignorance in fact, on the subject, will not affect the operation of the custom.

6. SAME — *its effect upon the rights of parties.* And if the sale by the consignee, although made for cash on delivery, did not exclude the operation of a usage of the character mentioned, under which a purchaser for cash had from one to three days in which to make payment, the purchaser being in good credit, the consignee would not be liable to the consignor, in the event of loss resulting from a failure to require payment from the purchaser immediately on delivery.

7. SAME — *parties may exclude the operation of a custom from their contract.* But the existence of such a custom will not preclude parties from so contracting as that it shall not affect their rights in the particular case.

8. ORAL EXPRESSIONS OF OPINION BY THE JUDGE, *during the trial of a cause.* If remarks made by a judge during the progress of a trial, indicating his opinion of the weight of evidence introduced, are calculated to mislead the jury, or prejudice the party, it would be ground for reversal of the judgment.

9. But where the judge remarked, in answer to a motion of counsel to exclude certain testimony of the opposite party, that he thought the fact to which that testimony related had been proven, it was not regarded as objectionable.

10. PAROL EVIDENCE — *and herein whether a retainer must be shown in the case of a factor.* Where grain is consigned to a commission merchant for sale, it is competent, in a suit against him to recover the proceeds, to prove the fact of his retainer by oral testimony. Indeed, it is immaterial whether a retainer is proved at all, or not, when it appears from letters written by him, that he received and sold the grain.

11. EVIDENCE — *it matters not by which party a fact is proven.* If the plaintiff in an action omit to prove a given fact which is essential to his case, and the defendant supplies the proof, the plaintiff may avail himself of it the same as though he had himself introduced it.

12. PRACTICE — *how to instruct a jury that the plaintiff has not made out his case.* The practice of the court precludes it from instructing the jury as in case of a nonsuit, where a material fact is omitted to be proved by the plaintiff; but in such a state of case, the defendant may ask the court to instruct the jury that if the given fact was not proved, they should find a verdict in his favor.

13. PARTIES PLAINTIFF — *of their joinder. Semble,* where two joint owners of grain consign it to a commission merchant for sale, one of the owners cannot, alone, maintain a suit to recover the proceeds. They should join in the action.

47

WRIT OF ERROR to the Superior Court of Chicago; the Hon. GRANT GOODRICH, Judge, presiding.

On the 30th day of May, 1861, Cyrenius Beers commenced an action of assumpsit in the court below, against John G. Deshler.

The declaration contained four counts. *First*, alleging a consignment to defendant as factor, and a promise by him to sell and account in a reasonable time, and to pay over proceeds when reasonably requested; that sales have been made and that such time hath elapsed, yet said defendant, though afterward requested, hath not yet rendered a just and reasonable account, or paid over the proceeds, etc.

*Second*, setting up a consignment to, and promise by defendant to render an account and pay proceeds to plaintiff when requested; sets forth a request, and failure to account.

*Third*, the common counts, for money had and received, etc., and

*Fourth*, alleging a retainer to defendant as factor, to sell for cash, promise to sell for cash, and a sale by him otherwise than for cash.

The defendant pleaded the general issue, and the cause came on for trial before a jury. The rights of the parties as involved in the suit, will be understood from the following statement:

During the season of 1860, the plaintiff, Beers, through his agent, Joseph H. Tiffany, a commission merchant in Chicago, shipped to Buffalo, New York, about sixty-two thousand bushels of corn, consigned to the defendant, Deshler, a commission merchant in that city, for sale on commission. These consignments were all sold by Deshler, the proceeds collected and paid over to the consignor, with the exception of 8,628 bushels, which form the subject of this suit.

On the 22d of August, 1860, a cargo of 21,785 bushels was shipped by Tiffany, for the plaintiff, on the propeller Potomac. It reached Buffalo on the 27th of the same month, and was put in store by Deshler, sales being dull, the current price of corn being only 48 or 49 cents.

On the 3d of September following, Mr. Beers was in Buffalo, and received from Deshler $5,025, as an advance on the Potomac's cargo, and then instructed him to use his own judgment in the disposal of the corn. No other instructions appear ever to have been given by Beers concerning the corn; and Tiffany stated that the corn was shipped in the usual course of business, without any specific instructions, so far as he knew. The intercourse between the plaintiff and Tiffany, and the defendant, seems to have been by letter, except on the occasion of Beers' visit to Buffalo already mentioned.

On the 18th of September, Deshler sold to A. L. Griffin, from the Potomac's cargo, 8,628 bushels of corn, at 55 and 56 cents, for which he gave him orders upon the elevator where it was stored, in the following form:

No. 1.                          BUFFALO, September 18, 1860.
HATCH ELEVATOR:

Deliver to A. L. Griffin, Esq., or order, 4,238 [47] bushels white corn, cargo Potomac, subject to my order until paid for.

JOHN G. DESHLER,
per JOHN DARRAGH.

No. 2.                          BUFFALO, September 18, 1860.
HATCH ELEVATOR:

Deliver to A. L. Griffin, or order, a boat load of corn, or 2,319 [26], Bt. Spangler.

4,384 [9], Potomac.   Subject to my order until paid for.

JOHN G. DESHLER,
per JOHN DARRAGH.

And the corn was delivered to Griffin accordingly. He had been a large buyer in Buffalo for several years, and bore a high reputation for integrity and responsibility.

There was evidence in the record to the effect that there existed at the time in Buffalo, among commission merchants, a custom that upon cash sales of produce the purchaser had from one to three days in which to make payment.

This transaction with Griffin was noted in Deshler's cash sale memorandum book; and on the same day he notified Beers by the following letter:

BUFFALO, Sept. 18, 1860.

C. BEERS, or Jos. TIFFANY:

Gents:—I to-day closed out the Potomac's cargo at 55 for mixed, 56 for white. I held until I thought there would be a change, and then gave it up for the present. The drop on wheat has had its effect on corn buyers. I have some 1300 bushels of Iowa yet on hand; will sell and give you sales of all in a day or two.  *  *  *

Respectfully,      JOHN G. DESHLER.

On the 20th of September, the second day after the sale, payment was demanded of Griffin several times by defendant below, and by his collecting clerk; but failing to obtain the money, and learning that Griffin had shipped the grain the day previous, defendant became alarmed, and, obtaining an attorney, went with him that evening in a carriage to Lockport, forty miles distant, and replevied two boat loads of corn, which were there overtaken. The next morning (Sept. 21) they continued their journey by railroad to Rochester, and replevied a third boat load at that place. By the law of New York, a delay of several days was necessary before Deshler could obtain possession; and not until about October 1st, did he get the corn fully within his control. To the replevin suit begun at Rochester, no defense was interposed. The suits, for the corn stopped at Lockport, were defended by Griffin, and no trial was had until January 28, 1862, long after this present suit was commenced.

In October, Deshler wrote to the plaintiff as follows:

BUFFALO, Oct. 12th, 1860.

C. BEERS or J. H. TIFFANY, Esq., *Chicago :*

Gentlemen—I inclose sales

| | | | | | | |
|---|---|---|---|---|---|---|
| 18,436 45 | bus. | Corn, | Cargo | Craig, | pro. | $8,261 58 |
| 19,399 | " | " | " | " | Iowa, | 8,788 29 |
| 2,877 37 | " | " | " | " | Danube, | 1,273 78 |

The charge of $107.05, for general average tax on propeller Iowa, I hope to get back from the Insurance Companies. So far they have shown but little disposition to settle.

The sales of Potomac's cargo I am unable to render just now. I have collected and placed to your account the proceeds of 13,157 [10] bush. of the cargo sold 14th September.

On the 18th, I telegraphed you of closing the cargo, viz.: 4,238 [47] white, and 4,389 [9] mixed, @ 56 and 55 respectively. For these two parcels the purchaser, A. L. Griffin, of this place, who had, up to this time, borne an unexceptionable character for business integrity and pecuniary resources—*failed to pay*. I therefore replevied the property at Lockport and Rochester; and it is now awaiting a decision, as regards ownership. Parties in New York claim it, on the ground that they have accepted Griffin's drafts made against it. *My position* is, that the corn is yours until paid for by Griffin, as all my orders on vessels and elevators read, *"Subject to my order until paid for."*

No positive steps have yet been taken by the New York house, owing, perhaps, to the fact that the drafts have not matured.

In the meantime, I have retained counsel, and if our opponents proceed, we shall meet them.

.Truly,      JOHN G. DESHLER,
Per J. DARRAGH.

Nearly three months after the receipt of this letter, Beers wrote as follows:

CHICAGO, January 2d, 1861.
JOHN G. DESHLER:

Dear Sir—I have this day drawn on you for three thousand dollars, on that corn sent you last summer. It belonged to Smith and myself, and Smith must have his money; hence this draft. I hope it will be convenient for you to pay it, and oblige          Yours, etc.,

C. BEERS.

This letter was immediately answered:

BUFFALO, January 5, 1861.

C. BEERS, ESQ.:

Dear Sir—Yours of 2d received. I cannot pay the draft. The suit in regard to your corn does not come off until 4th Monday of this month, and until that is decided can do nothing. Again, when you were last here I gave you the full market value of your corn, then on hand; and had I then sold, as I had a perfect right to do, there would have been nothing due. If I lose the suit you will be in good luck, if you are not called on to pay me on the corn account, instead of my paying you. My attorneys feel sure of gaining, but the uncertainties of law are great.

I feel perfectly justified in taking above course, when I know you already have in your hands all you would have been entitled to, had I sold as I had a perfect right to do, and as others did—that is at maturity of paper and advances. I hope I may be able to report before long that the suit is decided in our favor, and when I can do so will pay over any balance in my hands, at sight.        Respectfully yours,

JOHN G. DESHLER.

Two months afterwards, Beers wrote again:

CHICAGO, March 5, 1861.

JOHN G. DESHLER, Esq.:

Dear Sir:—I have not heard the result of that corn suit, or whether there has yet been a trial, and what the prospects are for a termination. Will you please inform me how matters stand? Our warehouses here are nearly filled with grain, and much more in the country than ever before, to come forward. as soon as it can be shipped. Buffalo need have no fears of famine after navigation opens, and I hope there will be a market for it at fair prices. Please inform me the result of the suit.        Yours, respectfully,

C. BEERS.

Deshler immediately replied:

BUFFALO, March 7, 1861.

C. BEERS, ESQ., *Chicago:*

Dear Sir— Your favor of the 5th is at hand. The suit has been laid over, in consequence of the absence of witnesses.

until the third Monday in May. The captains of the boats could not be found when wanted.

Your advice of grain accumulations corresponded with statements from all sections.    *    *    *    *    *    *

Truly yours,

JOHN G. DESHLER.

Per JOHN DARRAGH.

No further correspondence took place between the parties prior to the institution of the present suit.

In the spring of 1861, Messrs. Rawls & Seymour, of New York city, brought suit in trover against Mr. Deshler, at Buffalo for the corn replevied by him — claiming a right to the proceeds, by reason of advances made by them on the security of Griffin's bills of lading, (they having accepted drafts to which such bills were attached.) This suit, and the replevin suits at Lockport, were all pending at the commencement of this action by Beers.

When the plaintiff had rested his case, the defendant moved the court to instruct the jury that if the defendant's retainer was in writing, it was their duty, according to law, to find in his favor.

The court in reply stated, that he would instruct the jury as he understood the law, provided defendant was prepared to rest his case at this point, and in discussing the question with defendant's counsel, the court stated he thought the shipment and sale had been proven; that if any special instructions were given to defendant, it was for him to show them.

To this ruling, and to the oral expression of opinion by the judge, in hearing of the jury, as to what had been proven, the defendant excepted.

The business relations between the plaintiff and defendant were established by the oral testimony of witnesses, and the correspondence between the parties. The defendant moved to exclude oral testimony relating to the fact of retainer by the plaintiff of the defendant, but the court refused to do so, and exception was taken.

During the progress of the trial, the defendant also moved

the court to instruct the jury to find in his favor: *First.* Because there was no demand for an account proven; and, *Second.* Because it appeared from the letter of Beers to the defendant, bearing date on the 2d of January, 1861, that the corn belonged to Smith & Beers, and therefore, Beers alone, could not maintain the action. This motion the court also refused, stating that it was not the practice in this state to instruct as in case of a nonsuit; but that he would instruct the jury as he understood the law, provided defendant was prepared to rest his case at this point.

To this ruling defendant excepted.

Upon the testimony being closed, the court gave to the jury on behalf of the plaintiff, the following instructions, to which the defendant excepted:

1. If the jury believe, from the evidence, that the defendant sold the corn in question for cash on delivery, and without giving any credit to Griffin, it was his duty to obtain the pay for the corn before he allowed it to go beyond his control. This is so, unless, by a usage and custom among commission merchants in Buffalo, general and uniform among such merchants, and of long standing, that a sale for cash means a credit of the time stated by the witnesses for the defendant, and the defendant sold the corn with reference to said custom, and not for cash on delivery.

3. If the jury shall believe, from the evidence, that defendant sold the corn to Griffin by special agreement for cash, to be paid for on delivery, and that through any negligence or carelessness on the part of defendant, Griffin was allowed to get possession of and remove the corn without paying for it, then the law is for the plaintiff.

4. The law holds a consignee, in the conduct of the business of the consignor, to the same degree of care and diligence which a prudent man would exercise in the management of his own business.

5. If the jury shall believe, from the evidence, that the defendant sold the corn to Griffin, for cash, and that afterward he replevied the corn from Griffin and sold it again, and that

Griffin got possession of the corn through the fault or negligence of defendant, and thereby involved defendant in a controversy with the parties to whom he pledged it, then the defendant must account to the plaintiff for the proceeds of this second sale.

6. If the jury believe, from the evidence, that the plaintiff consigned the corn in question to the defendant, to be sold on his account, and that the defendant has sold the corn and received the pay for it, and failed and refused to account for the same, they will find for the plaintiff.

7. If the jury shall believe, from the evidence, that the defendant, upon the first sale, sold the corn to Griffin, to be specially paid for in cash, on delivery, and that afterward, as a matter of favor to Griffin, he allowed him to take and keep possession of the same for two or three days without paying for it, he did so at his own risk, and the law is for the plaintiff.

8. If the jury believe, from the evidence, that the defendant sold the corn in question, for cash, to be paid for on delivery, not intending it as a sale, to be paid for in three or four days, according to the usage claimed to exist, then the testimony of the defendant's witnesses, relative to the custom of the Buffalo market, has no application to the case on trial.

9. If the jury believe, from the evidence, that the defendant sold the corn to Griffin, for cash, and it was agreed to be paid for on delivery, and that when the corn was delivered to Griffin he was solvent and responsible, then it was the duty of the defendant to collect the money on its delivery; and if they further believe, from the evidence, he neglected so to do, and between the delivery of the corn and the time of the attempt by the defendant to collect his pay for the same, the said Griffin became unable to pay for the same, and thereby the corn became lost to the plaintiff, then the law is for the plaintiff.

Defendant then prayed the following instruction:

If defendant is liable at all in this action, it must be on one of two grounds: either on account of the sale to Griffin, or on account of his having received the money for the corn. But defendant is not liable on the first ground, unless the jury find, from the evidence, that the sale was made contrary to the

48

Deshler *v.* Beers.

general and uniform usage then prevailing at Buffalo, or that Griffin was not then in good credit; nor is he liable on this ground if the jury find, etc., that plaintiff has ratified such sale.

And defendant is not liable in this suit for the money received, unless the jury find, etc., that when this suit was commenced, all suits between defendant and parties in New York, as to the ownership of said corn, had been decided in defendant's favor, or that it was his fault that they had not been so decided.

The court struck off the latter clause of said instruction, and gave the remainder; and defendant excepted to its refusal to give the same as prayed, and also to the giving of part thereof, after the rest had been stricken off.

The court then gave to the jury, on behalf of defendant, the following instructions:

Unless jury believe, etc., that a demand was made on defendant by plaintiff, before commencement of this suit, or that defendant delayed an unreasonable time before sending plaintiff a statement of the transaction with Griffin, jury will find for defendant, or unless he denied his right to said corn or its proceeds.

If, etc., defendant sold the corn according to the settled usage in Buffalo, and the buyer, Griffin, was then in good credit, defendant is not liable on account of such sale; and if such usage was of long standing, general and uniform.

Plaintiff was bound to take notice of the usage of trade at Buffalo; and if he was in fact ignorant, it was his fault, and defendant is not responsible on account of his ignorance, if such usage was of long standing, general and uniform.

A principal, when fully informed of his agent's acts, must dissent in a reasonable time, or he will be held to have ratified them; and if jury find, etc., in this case, that plaintiff received full information by the middle of October, 1860, of defendant's acts, and remained silent and inactive until January 5, 1861, that was not a reasonable time.

A sale is a cash sale, though bill may not be sent in for two or three days, if no express orders are given by the owner, and such is the established usage of trade at the place where the sale is made, and such usage is of long standing, general and uniform.

If jury find, etc., defendant, January 5th, 1861, sent plaintiff letter herein, of that date, in regard to the corn in question, and plaintiff received the letter and did not reply until March 5th, and then sent in reply the letter herein of that date, this tends to show an acquiescence in what had so far been done, if, etc., plaintiff had been fully informed of the same.

If jury find, etc., that plaintiff has, with full knowledge of all the facts, acquiesced in defendant's acts, and that questions of ownership between defendant and the several New York claimants of the corn or its proceeds, were not decided in his favor before this suit was begun, and without defendant's fault, they will find for defendant.

If jury find, etc., that plaintiff instructed defendant to use his own judgment as to terms, as well as time, in selling, and that defendant sold according to the prevailing and long established usage in Buffalo, and that Griffin was then in good credit, and that defendant used reasonable diligence to secure the corn or its proceeds, on Griffin's refusal to pay, and that any suits, by or against defendant, to recover said corn or its proceeds, was (without defendant's fault) still pending when this suit was begun, they will find for defendant.

If jury find, etc., that defendant replevied the corn, and afterward sold it a second time, and received the money, and that a suit or suits, in which defendant was a party, brought to determine the ownership of said corn or its proceeds, were pending in New York when this suit was begun and ownership undetermined, without defendant's fault, then defendant is not liable on account of receipt of money, if jury further find that defendant had been guilty of no negligence in the first sale, and up to time of replevying.

If jury find, etc., that corn in question was owned by Smith & Beers, together, and was shipped to defendant by Tiffany, as consignor, and that only demand for payment was in name of Smith & Beers, jointly, then plaintiff cannot maintain the suit by himself, and they will find for defendant.

The jury rendered a verdict for the plaintiff for the sum of $4,787.78. A motion for a new trial was denied, and judg-

ment entered against the defendant upon the verdict. He thereupon sued out this writ of error.

The questions arising upon the record, in view of the conclusions of this court upon the matters of fact presented in the case, are, *first*, was the defendant below liable to the plaintiff for the sale to Griffin, on the ground of negligence? *second*, was the oral expression of opinion by the judge, on the trial, that the shipment and sale of the corn had been proven, of such character as to require a reversal of the judgment for that cause? *third*, whether it was competent to prove the fact of the retainer of the defendant by oral testimony; and, *fourth*, of the mode of instructing a jury that the plaintiff has not established his case.

Messrs. PAYSON & REYNOLDS, for the plaintiff in error.

Messrs. HOSMER & PECK, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In terms, this was a sale for cash, and not on time. But it is insisted, that by the usage at Buffalo, where the sale was made, a sale for cash on delivery, entitled the purchaser to three days within which to make payment. A number of witnesses so testified, who were in, or were familiar with, the commission business at that place. Even if such a custom was established, it would not prevent the parties from so contracting, that the seller would have the right to receive the money on the delivery of the produce. In this case, we are of the opinion, from the evidence, the parties did not contract with reference to such a custom or usage.

The sale was made on the afternoon of the 18th of September, 1861, and on the twentieth, payment was repeatedly demanded, but not obtained. On the same day plaintiff in error pursued the boats, and legal proceedings were instituted for the recovery of the corn on two of them, and on the next morning for the remainder upon the other. This was all done by plaintiff in error, within the three days, which he now claims, was allowed under the usage for the purchaser to make

payment. Again, the order given to the purchaser for the delivery of the corn, contains this reservation: "Subject to my order until paid for." The entry made in the books of plaintiff in error, noted it as a sale for cash, and not a sale on the usual terms. From all of these circumstances, it would seem that the sale was not on time, or under any supposed usage, but was an actual cash sale on delivery, and the title not to pass until the money was paid. This is the construction put upon the contract by plaintiff in error, as manifested by his acts. And is the strongest evidence that it was not within the usage, if any such existed.

The remarks made by the judge during the progress of the trial, were to the counsel, and were not an instruction to the jury. Whilst courts should be extremely careful never to indicate, by any remark, their opinion of the weight of evidence, yet, unless it is calculated to have that effect, it will not be held ground for a reversal. We all know that it is almost impossible, in the progress of a trial, to avoid the necessity of counsel making inquiries of the court, and remarks made in reply, to enable parties to progress with the trial in conformity with the rulings on the various questions that are presented for determination. When the motion to exclude the plaintiff's evidence was overruled, it was clearly indicated, that the court considered that there was evidence establishing his right of recovery unless rebutted, and yet no one would think of seriously objecting because it was not given as an instruction in writing, to the jury. If remarks made by the judge in the progress of a trial are calculated to mislead the jury, or prejudice the party, it would be grounds for reversal. But in this case, we think the remark made by the judge was not calculated to produce that effect.

We perceive no force in the objection that the retainer was not proved by the writing. It appeared from the letters of plaintiff in error, that he had received, and had sold the corn of defendant in error, and owed him for it. When this appeared, it was immaterial whether a retainer was proved or not, as that could in no wise affect the case.

Even if a demand on plaintiff in error was necessary to authorize a recovery, it appears from the evidence to have been made. Nor can it make any difference that this proof was made by plaintiff in error. If such proof was necessary, and defendant in error failed to make it before he closed his evidence, the other party should not have supplied it, but have relied upon an instruction, informing the jury of its necessity to authorize a recovery; when he supplied this proof he waived all right to insist that the court erred in refusing to exclude the evidence for the want of this link in the chain. The practice of the court precludes it from instructing the jury to find as in case of a nonsuit. The plaintiff in error might, if he chose, have submitted the case to the jury and asked an instruction, that if the jury found that a certain material fact was not proved, they should find a verdict in his favor.

The question whether the corn belonged to Smith and Beers jointly, or to Beers alone, was fairly presented to the jury, and they have found that it was not a joint ownership. This finding may be different from the conclusion at which we might have arrived, had the question been presented to us as jurors, yet we are not prepared to say that it is not warranted by the evidence. The instructions as given, present the law fairly as it is applicable to the facts in this case, and the verdict must be sustained, and the judgment of the court below affirmed.

*Judgment affirmed.*