(No. 21780.—<span style="color:black"></span>

THE PEOPLE *ex rel.* Oscar Nelson, Auditor of Public Accounts, *vs.* THE PEOPLES BANK AND TRUST COMPANY OF ROCKFORD.—(EUGENE ABEGG, Receiver, Plaintiff in Error, *vs.* THE AMERICAN TERRAZZO AND TILE COMPANY, Defendant in Error.)

*Opinion filed October 21, 1933.*

HALL & DUSHER, for plaintiff in error.

HODGES & TRAGETHON, for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

The facts in this case are neither complicated nor disputed. On June 11, 1931, Tolmie Bros., Inc., of Rockford, Illinois, (hereinafter referred to as Tolmie Bros.,) were indebted to the American Terrazzo and Tile Company, (hereinafter referred to as the terrazzo company,) and in part payment of that indebtedness sent a check for $10,000 to the terrazzo company drawn on the Peoples Bank and Trust Company of Rockford. Upon receipt of this check the terrazzo company executed a partial waiver of lien and attached it to the check and placed both the check and the waiver of lien with the First National Bank of Springfield, Illinois, for collection and remittance. On the same day the Springfield bank forwarded the check and waiver of lien to the Peoples Bank and Trust Company of Rockford, upon which the check was drawn, with instructions as follows: "Waiver of lien to be released to Tolmie Bros., Inc., upon payment of this check. Kindly remit and oblige." On June 13, 1931, the Peoples Bank and Trust Company (hereinafter called the Rockford bank) honored the check and charged it to the account of Tolmie Bros., but, instead of remitting in cash to the Springfield bank, sent its draft upon the First National Bank of Chicago, payable to the order of the Springfield bank, in the sum of $10,000. The Springfield bank sent this draft to the First National Bank of Chicago for payment, but it was returned with the notation, "Drawing bank closed," and although there was more than enough money in the Chicago bank to the credit of the Rockford bank to pay it, it was never paid. The Rockford bank was closed by the Auditor of Public Accounts of the State of Illinois on June 15, 1931, and the plaintiff in error herein was thereafter duly appointed receiver. The terrazzo company by leave of court intervened in the receivership proceeding, claiming a preference in the sum of $10,000 on the ground that the proceeds of the check sent for collection constituted a trust fund for the reasons hereinafter

more fully discussed. Upon a hearing the circuit court denied any preference but allowed the claim as an ordinary claim, without preference. On appeal to the Appellate Court for the Second District this judgment of the circuit court of Winnebago county was reversed and the cause remanded, with directions to enter a finding that the terrazzo company was entitled to a preferred claim over the general creditors. The cause is here on *certiorari* to review the judgment of the Appellate Court.

The situation here presented is neither free from difficulty nor from conflict of authority, although we are of the opinion that the judgment of the Appellate Court is right and should be affirmed and that it is in accordance with the later cases and the better reasoning upon the points at issue. There are a number of cases identical with this one in different jurisdictions and a great many of them are sufficiently similar to be of assistance in forming our opinion, but the reasons assigned for their decisions by the various courts are so different and their conclusions are based upon so many different grounds that it is fruitless to try to determine where the weight of authority may lie. It appears to us that the later cases, where the various elements have been carefully considered, show a clear and unmistakable tendency toward holding that the funds involved in a state of facts such as this are trust funds and that the owner of the check forwarded for collection is entitled to the allowance of the preference, subject to certain conditions which will be hereinafter stated.

For a clear understanding of the point at issue it should be mentioned at the beginning that many of the propositions of law and authorities cited on behalf of the plaintiff in error are excluded by the facts in this particular case. Much authority is cited to the effect that one who "accepts" a negotiable instrument thereby becomes the principal debtor, and that upon such acceptance the acceptor enters into the relation of debtor and creditor with the

drawer of the instrument and prior holders. No question of acceptance is involved in this case. The check was not "accepted" by the Rockford bank but was discharged by payment. Many other authorities are cited to the effect that where a draft is issued at the request of the payee of a check drawn upon the collecting bank, in accordance with instructions accompanying the item sent for collection, the relation of debtor and creditor exists, as to which there could be no question. All of these authorities are excluded by the instructions which accompanied this particular check. There was no direction to the Rockford bank to remit by draft but only to remit. Other cases and statutes are cited to the effect that the check did not operate as an assignment of any funds. There is no such contention here and this point is not at issue.

We think that counsel for the plaintiff in error has correctly stated the law when he says that in order to establish a preference it is necessary for the claimant to show (1) that the transaction created the relation of principal and agent—not debtor and creditor—between itself and the Rockford bank; (2) that by the transaction the assets of the bank were augmented; and (3) that the claimant can trace the trust fund into the hands of the receiver.

All of the authorities are agreed that in its inception, at the time a check is forwarded by one bank to another upon which it is drawn, for collection, the relation is that of principal and agent, and it is from this point that they diverge. The older cases, such as *Milling Co.* v. *Trust Co.* 242 Mass. 181, 136 N. E. 333, 24 A. L. R. 1148, and *Citizens Bank of Pinewood* v. *Bradley,* 134 S. E. (S. C.) 510, hold that before the collection is made the relation between the owner of the paper and the collecting bank is that of principal and agent but that after the collection has been made the relation of debtor and creditor arises, and state that this conclusion is based upon the custom of

banks to credit those for whom collections have been made and remit in the bank's usual exchange. They say it will be presumed that the owner of the paper had acquiesced in the custom of the collecting bank to mingle the collection with its own funds, assuming the position of a debtor to the owner. Without attempting to review all of the cases, we will say that we are aware of a line of authority adopting this view.

In our opinion the frailty of the above argument lies in assuming, and basing relief upon, a custom neither pleaded nor proved. If such a custom is to be binding upon the parties it must be so universal in its application that when so proved it will conclusively be presumed to have been a part of the contract of forwarding. In such a case, the custom not being expressed in the instructions accompanying the paper, it would, in our opinion, clearly be necessary to allege and prove its existence. It is entirely possible that collections are frequently remitted in currency by express, by postal money order, by express money order, by draft of some other bank, or by some other special means. We cannot take judicial notice of the existence of any such custom as is mentioned in these cases, if it really exists, or follow them in so far as they are based upon such an assumption. If the admitted relation of principal and agent is to be suddenly changed to that of debtor and creditor such a result must be brought about by some definite act, and it seems to us that this definite act must be one concurred in by the principal, as the relation of debtor and creditor is a contractual relation and bilateral in its inception.

The owner of the check in question, the terrazzo company, had the undoubted right to present this check to the Rockford bank and demand payment, and it might, in so presenting it, use any form of messenger it desired. That it chose to present it by mail through a correspondent bank can make no difference in the rights of the parties nor be held to create an unintended and undesired rela-

tion of debtor and creditor between it and the Rockford bank. In one sense of the word it might be said that a messenger boy who goes to the bank with a pay-roll check and a satchel and gets currency for his employer is indebted to the employer as soon as he has the money in the bag. It would be undisputed, up to the point of his actually becoming possessed of the money, that the boy was a bailee, only. Clearly, he continues to be a bailee after the check is converted into currency unless he becomes a debtor *ex delicto*. The employer never intends to extend him any credit nor to make him his debtor in the amount of the cash being carried, and there is no contractual relation between them other than one of employment and of bailment. It is true that the messenger boy, the same as the Rockford bank, owes a certain duty, but that duty is not to pay a certain sum of money but to deliver the money. We think it is clear that the forwarder of the check, in the absence of specific instructions to remit by the collecting bank's own check or draft, and in the absence of reciprocal accounts, as in this case, never intends to become a creditor of the paying bank or to extend to it any credit or trust. The duties of the paying bank are strictly clerical and manual—*i.e.*, to safely remit the money to the forwarding bank or owner of the check—and if the relation of debtor and creditor ever arises between them it must be an *ex delicto* matter. A contract cannot exist between the parties without an intention on both sides to enter into one, and no one can be forced to become a creditor of another *ex contractu* against his will. *Skinner* v. *Porter*, 45 Ida. 530, 263 Pac. 993, 73 A. L. R. 59; *Hawaiian Pineapple Co.* v. *Browne*, 69 Mont. 140, 220 Pac. 1114; *State Nat. Bank* v. *First Nat. Bank*, 124 Ark. 531, 187 S. W. 673; *Goodyear Tire and Rubber Co.* v. *Hanover State Bank*, 109 Kan. 772, 204 Pac. 992, 21 A. L. R. 677; *Bank of Poplar Bluff* v. *Millspaugh*, 313 Mo. 412, 281 S. W. 733, 47 A. L. R. 754.

In the case of *Skinner* v. *Porter, supra,* the court uses the following language: "It is quite generally held that when a bank receives paper for collection and remittance from a stranger, who is not a depositor of the collecting bank or between whom there are no reciprocal accounts, and accepts in payment a check or checks drawn upon itself, a trust fund in favor of the drawer or forwarding bank is thereby created, which fund may be followed and recovered from the receiver or assignee of such bank if the latter shall become insolvent." It is worthy of note in connection with that case that the Idaho court expressly overruled its own prior holding on this exact point. *In re Citizens State Bank,* 44 Ida. 33, 255 Pac. 300, and *National Bank* v. *Porter,* 44 id. 514, 258 Pac. 544.

In the case of *Bank of Poplar Bluff* v. *Millspaugh, supra,* the court says: "To hold that the relation of principal and agent, where a reciprocal-accounts course of business does not exist, is changed to that of debtor and creditor by collecting an item sent for collection and remittance, does not appeal to us as sound reasoning. Neither is it sound, in our opinion, to hold that the relation of principal and agent is changed to that of debtor and creditor by the mere act of remitting by draft instead of sending the cash. Either holding compels the sender of the item to become a depositor—a creditor in the true sense of the term—of the collecting bank, whether such is desired or not. If an item is sent to an individual for collection and remittance and he collects but fails to remit, or remits by check or draft, and the check or draft for any reason is not paid, the individual remains the agent of the sender. We can see no reason why the same rule should not apply to a bank." This reasoning appeals to us as being in full accord with the general rules of law pertaining to principal and agent and the laws of contract, and we are impelled to agree with it.

The second question raised by the plaintiff in error concerns the existence of a *res* upon which a trust may operate, it being his contention that by the transaction the assets of the bank were not in any way augmented. In this connection it is argued that the assets of the bank were not augmented or increased by the transaction, because the bank was indebted to Tolmie Bros. on its deposit and by the "acceptance" of the check became indebted to the terrazzo company; that the bank by a book-keeping transaction and the drawing of a draft merely shifted the evidence of its indebtedness from Tolmie Bros. to the terrazzo company, and that this changing of the evidence of indebtedness from one to the other could not increase or augment the assets of the bank. It will readily be seen that for this argument to have any validity it must be assumed that the Rockford bank became the creditor of the terrazzo company, which, as above pointed out, it did not. It would be necessary further to assume that the Rockford bank merely "accepted" the check, but we have already held that it did not "accept" the check but discharged the instrument by payment. This argument has been well and effectually answered by many courts and we will quote from two of them. In *Skinner* v. *Porter, supra,* the facts were practically identical with those in this case and the same identical question was raised. In its opinion the court says: "Had Summitt presented his checks to the Bank of Hansen and received the cash therefor, then handed the cash back to the bank to be forwarded to the Kuna State Bank, and the same was intermingled with the moneys of the Bank of Hansen, it must be conceded that such money would not have been an asset of the Bank of Hansen although it would have augmented the funds that came into the possession of the receiver. But the situation was not altered by reason of the fact that the Bank of Hansen received checks drawn on it instead of cash." In *Goodyear Tire and Rubber Co.* v. *Hanover*

*State Bank, supra,* in passing upon an identical question, the court uses the following language: "The court is of the opinion that the rule applies that where a payment to a bank is made by a check drawn thereon, the result is the same as though the depositor had presented his check, received the money over the counter and then used it in making the payment. That rule has often been announced.— *Washbon* v. *Linscott State Bank,* 87 Kan. 698, 125 Pac. 17; 2 Morse on Banks and Banking, (5th ed.) sec. 451, and cases cited in note." We hold that when the Tolmie check was presented to the Rockford bank and canceled, the funds represented thereby became definitely a *res* upon which a trust might, and immediately did, impress itself, in the same manner and to the same extent as though Tolmie Bros. had withdrawn the currency and handed it back to the bank with instructions to remit it, without signifying the manner or form of remittance.

As to the third point raised or suggested by plaintiff in error, that of tracing the trust fund into the hands of the receiver, there appears to be no dissent among the cases. It is a conclusive presumption in equity that a trustee dissipates or spends his own funds first, before touching or encroaching upon the trust fund. From this it follows that if there was more than the amount of the trust fund on hand at the time the draft was drawn, and at all times thereafter until the closing of the bank, the trust fund must have been included with that which the receiver took over.

For the reasons above indicated we are of the opinion that the funds in the hands of the receiver for the Rockford bank were, and are, impressed with a trust to the extent of the amount of Tolmie Bros.' check for the use and benefit of the terrazzo company, and that the judgment of the Appellate Court is right and should be, and is, affirmed.

*Judgment affirmed.*