(No. 23393.—

The O. B. Avery Company, for use, etc. Appellant, *vs.* The Highway Commissioner of Road District No. 8-1, Appellee.

*Opinion filed April 24, 1936.*

Denison & Spiller, for appellant.

J. Roy Browning, and Charles C. Murrah, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

On March 4, 1930, the O. B. Avery Company sold a tractor to the highway commissioner of the town of Blairsville, Williamson county, for $3450. The proper township officers issued two tax anticipation warrants dated March 8, 1930, each for $1725, with interest at six per cent, and due, respectively, on May 1, 1930, and October 10, 1930. The tractor had been purchased by the Avery Company from the Allis-Chalmers Manufacturing Company, for whose use this suit was brought, and the Avery Company gave its note for the purchase price. The Avery Company assigned the warrants just referred to, to the Allis-Chalmers Company for a valuable consideration. After the warrants were issued, but before this suit was begun, Williamson county abandoned township organization and adopted county organization. The town of Blairsville became road district No. 8-1. This suit was begun in December, 1930, by the Allis-Chalmers Company on the tax warrant due May 1, 1930, against the highway commissioner of road district No. 8-1 in Williamson county. A judgment for the plaintiff was reversed and the cause remanded by the Appellate Court for the Fourth District because of the failure of plaintiff's declaration to state a cause of action. (*Allis-Chalmers Manf. Co.* v. *Town of Blairsville*, 266 Ill. App. 627.) The declaration was amended, and upon a trial before the court without a jury a judgment was entered in favor of the defendant. That judgment was affirmed. Leave to appeal having been granted, the cause is here for further review.

The declaration contained a special count and the common counts. The special count alleged compliance with the statute governing the issuance of anticipation warrants, the levy and collection of the taxes, and their payment to the treasurer of the road and bridge fund. It alleged the assignment of the tax warrants to the Allis-Chalmers Man-

ufacturing Company; that the treasurer of the road and bridge fund deposited the taxes collected in the Cambria State Bank, and wrongfully allowed the money to remain in the bank after he knew, or should have known, that the bank was in a failing condition, and that the money was permitted to remain on deposit in the Cambria Bank until it became insolvent and was closed by order of the State Auditor. It was alleged that on April 9, 1930, the commissioner and treasurer undertook to pay the anticipation warrants and issued a check drawn on the Cambria Bank to the order of the O. B. Avery Company; that the Cambria Bank closed on April 14 without payment of the check, and by reason thereof the township became liable to the Allis-Chalmers Company for money had and received. The defendant filed the general issue and a plea of payment. For the most part the facts are stipulated.

The appellant's first contention is that the appellee had notice that the warrants were assigned to the Allis-Chalmers Company before the check was given to the Avery Company on April 9, 1930. H. T. Lippert, who was employed as salesman by the Avery Company, testified at the second trial for the first time that he told the road commissioner of Blairsville township when he made the sale, and again when he delivered the tractor, that the warrants would be turned over to the Allis-Chalmers Company and would be presented at Cambria for payment a few days before they were due. Notwithstanding this, he said that the Avery Company sent him to Herrin in response to highway commissioner Harris' telegram, by which Harris notified the Avery Company he desired to make a payment on the purchase price of the tractor. At this trial, for the first time, Lippert also testified that he told Harris on April 8, 1930, in response to Harris' question as to whether Lippert brought the warrant with him, that he did not have it and that it had been endorsed over to the Allis-Chalmers Company, and that he repeated this statement in the presence

of Harris and Anderson the next day. He said he asked Harris and Anderson to make the check to cash, to obtain the money on it at the bank and to telegraph the money to the O. B. Avery Company, but that they thought the bank would remain open a few days longer and that there would be time for the check to clear. He stated that he received the check covering the first warrant in the amount of $1734 and an additional check for $83.30 covering items not here in question, and that both checks were made payable to the O. B. Avery Company. He mailed the checks by special delivery to the Avery Company's office in St. Louis. Harris was not called as a witness at the second trial, but Anderson testified that he did not remember Lippert saying anything about the assignment of the warrants to the Allis-Chalmers Company and that he did not remember Lippert asking them to get the money at the bank. He testified further that they asked Lippert to go to the bank at Cambria and cash the check, but that Lippert said he had no authority from the Avery Company to endorse the check but that he would send it immediately to the company at St. Louis and that it would be all right. In answer to the question as to whether Lippert said that the warrant had been assigned to the Allis-Chalmers Company, Anderson replied, "No sir, I don't think so." He also stated that he did not know, and that no one had told him as treasurer of Blairsville township at the time the $1734 check was given, that the anticipation warrants payable to the O. B. Avery Company which he had issued as supervisor of the township had been transferred and sold or assigned to the Allis-Chalmers Manufacturing Company.

There is no testimony that the Allis-Chalmers Company gave any notice to the highway commissioner of the road district that the warrants had been assigned to that company. As has been pointed out, Lippert was an employee of the Avery Company, and it is significant that when the check was given in payment of the second warrant, in No-

vember of the same year, it, too, was drawn to the order of the O. B. Avery Company.

The Appellate Court correctly found that the evidence was in conflict as to the fact of notice of the assignment of the warrants. It was also correct in its refusal to disturb the finding of the trial court. The finding of the Appellate Court as to notice of the assignment is one of fact, and where there is any evidence in the record to support the finding it is binding upon this court. (*Economy Fuse Co.* v. *Standard Electric Co.* 359 Ill. 504, 511; *City of Alton* v. *Foster,* 207 id. 150; Civil Practice act, sec. 92, sub-div. 3-*b*, 110 S. H. A. 216; Ill. State Bar Stat. 1935, p. 2451.) There was evidence here, as we have pointed out, to support the finding of fact of the Appellate Court, and this contention of appellant is therefore overruled.

The cases appellant relies upon, such as *Morgan* v. *New York Central Railroad Co.* 327 Ill. 339, to support the contention that notice to the highway commissioner of the assignment of the warrant was proved without controversy and was therefore a question of law and not a controverted question of fact, are not in point for the reasons just stated.

The appellant contends that in any event the giving of the check was not payment of the warrant. There had been a number of bank failures in Williamson county, and the appellee was anxious to pay the warrant which was due on May 1, 1930, so that the funds would not be tied up by a bank failure. There was ample money in the road and bridge fund to pay the warrant. As we have pointed out, Harris wired the Avery Company on April 5, 1930, that the road district wished to pay the warrant and for it to send a representative. Thereafter Lippert called on the road district officials. The treasurer of the road and bridge fund drew a check payable to the Avery Company for $1734, (the amount due on the first warrant,) and delivered that check to Lippert, together with another check for $83.30 to cover an item which is not material here. Lip-

pert immediately mailed the checks to the Avery Company in St. Louis. The Avery Company received the checks on April 10 and endorsed and deposited them with the Mercantile-Commerce Bank and Trust Company of St. Louis. The Mercantile Bank on the next day sent the checks by mail direct to the Cambria Bank. Accompanying the checks were instructions from the Mercantile Bank to the Cambria Bank, the drawee, which are in part as follows: "Please remit to us in payment in St. Louis, Chicago or New York exchange (St. Louis preferred) or in accordance with special instructions in this letter. We enclose for collection and remittance cash items as listed. If not paid upon presentation advise us at once by mail, stating the reason for refusal. Items listed are cash (not collections), and must be handled strictly in accordance with instructions. If not paid on presentation, wire reason. Do not remit or advise credit for this item unless actually paid." The Cambria Bank received the checks and instructions on April 12. It stamped the checks paid, charged them to the account of the treasurer of the road and bridge fund and afterwards returned them to the treasurer. The proceeds of the two checks were remitted to the Mercantile Bank by the Cambria Bank's draft on the First National Bank of St. Louis. Upon presentment the First National Bank refused to pay the draft because of insufficient funds in the Cambria Bank's account. The draft was again presented on April 15, but was not paid because the Cambria Bank had been closed on April 14.

Where a bank receives a check drawn on the drawer's checking account in it, stamps the check paid, charges it to the account of the drawer and credits the payee with the amount, the check is regarded as paid. (*People* v. *Peoples Bank and Trust Co.* 353 Ill. 479, 486; *American Exchange Nat. Bank* v. *Gregg,* 138 id. 596.) The appellant admits this is the rule, but contends that it proved the existence of a custom which takes this case out of the general

rule. It introduced testimony to prove that in St. Louis and in the southern part of this State the usual banking practice required a bank receiving a check drawn on a bank in another city to send the check direct to the drawee bank for payment and that the drawee bank would then issue its draft on its correspondent bank in payment of the check. The appellant contends that the defendant is charged with knowledge of this custom, and that the check is not to be regarded as finally paid until the draft issued to remit the proceeds is paid. It is to be noted in this case that the Mercantile Bank requested that the Cambria Bank remit in St. Louis exchange, and since this was done the custom must give way to the express agreement between the banks. (*Deshler* v. *Beers,* 32 Ill. 368.) Reference to *People* v. *Peoples Bank and Trust Co.* 353 Ill. 479, shows that this evidence of custom would not have the effect contended for by the appellant. It does not prevent the check from being considered paid, but proves that the relation between the drawee Cambria Bank and the Mercantile Bank had been changed from that of principal and agent to debtor and creditor. The Mercantile Bank's request that the proceeds be transmitted by draft was in accord with the custom, and it showed a willingness to accept the drawee bank as its debtor after the latter had collected the proceeds of the check. The appellant's contention that the check given for the warrant was not paid is overruled.

The appellee urges several points in his brief in support of the judgments of the trial and Appellate Courts. The Appellate Court did not pass on some of them. Since the judgment of the Appellate Court must be affirmed it is not necessary to consider the points urged by the appellee in support of it.

*Judgment affirmed.*