The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, Appellee, v. Divernon State Bank of Divernon. In re Intervening Petition of L. H. Reichert, Appellant.

Gen. No. 8,964.

Opinion filed January 15, 1937.

JOHN G. FRIEDMEYER, of Springfield, for appellant.

A. M. FITZGERALD, HARRY C. MOORE, and LOREN E. SULLIVAN, all of Springfield, for appellee.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

The issue in this case arose out of the following state of facts: L. H. Reichert, the intervening petitioner,

was a depositor in the Divernon State Bank of Divernon, Illinois, prior to September 5, 1930. On that date he drew a check for $416 upon his account in the Divernon bank, made payable to the order of B. F. Reichert, which check B. F. Reichert indorsed and deposited in the Ridgely-Farmers State Bank of Springfield, Illinois. On September 13, 1930, L. H. Reichert drew another check in the amount of $1,250, upon the Divernon State Bank payable to cash, which he deposited in another account maintained by him in the Ridgely-Farmers State Bank of Springfield. In the course of its business the Ridgely-Farmers State Bank forwarded these two checks to its clearing bank, the Federal Reserve Bank of Chicago. At the time the two checks were drawn L. H. Reichert had a credit upon his account in the Divernon Bank of $1,842.70. This credit included a $300 check drawn by Mr. Reichert upon his account at the Ridgely-Farmers Bank, and which Mr. Reichert had deposited to his account in the Divernon bank just prior to September 16, 1930, and for which he had received a conditional credit drawn on his account at the Ridgely-Farmers State Bank. On the 17th day of September, 1930, the Divernon bank closed, and when it closed L. H. Reichert stopped payment at the Ridgely-Farmers bank of the $300 check. This check was protested and charged back to the receiver of the Divernon bank, for a total of $302.50, which included the protest fee. On September 15, 1930, the Federal Reserve Bank of Chicago had transmitted its cash letter of that date to the Divernon bank, inclosing a number of checks for collection, totaling $4,118.03, included in which were the $416 and $1,250 checks of L. H. Reichert. The cash letter contained the following verbiage: ''We inclose herewith for collection and remittance at par in Chicago Exchange items listed below.'' This letter was received by the Divernon bank on September 16th, and the account of

L. H. Reichert was charged in the amount of $1,666. In order to pay these two checks, and others included in the cash letter, the Divernon bank drew a draft on the First National Bank of Chicago in the total of $4,118.03, and transmitted the same by mail to the Federal Reserve Bank of Chicago. At the time this draft was drawn the Divernon bank had a credit on the books of The First National Bank of Chicago in the amount of $6,000. The Federal Reserve Bank of Chicago then presented the draft to The First National Bank of Chicago but the latter refused payment because of the closing of the Divernon Bank on September 17, 1930. All of the checks covered by the draft were then charged back to the respective accounts of the depositors in the Divernon State Bank.

Soon after this transaction a bill was filed in the circuit court of Sangamon county, by Oscar Nelson, auditor of public accounts of the State of Illinois, to appoint a receiver for the Divernon bank. L. H. Reichert filed his intervening petition on January 5, 1931, praying for a preference in the amount of $1,666. The records of the Divernon State Bank then showed by reason of charging his account with the checks for $416, $1,250, and $300, that L. H. Reichert owed the bank the sum of $125.86. Subsequently the receiver of the Divernon bank filed with the circuit court of Sangamon county a list of unfiled claims which included that of L. H. Reichert, in the amount of $1,540.14, which was the amount of the two checks he had drawn upon the bank in the amount of $416 and $1,250, less the offset of $125.86 which the records of the bank showed that he owed. This net claim was allowed as a general claim. Subsequent to this time the intervening petitioner received and accepted in the process of the liquidation of the Divernon bank, dividends totaling $385.03, and it was stipulated between the parties to this suit that L. H. Reichert's preference,

if granted, should be in the amount of $1,155.11. On June 10, 1934, the circuit court of Sangamon county entered a decree denying the prayer of L. H. Reichert's petition for a preference and it is from this decree that this appeal is taken.

It is insisted by the intervening petitioner that the trial court committed error in finding that the relation of debtor and creditor existed between the intervening petitioner and the Divernon State Bank. It is urged by the petitioner that when the draft, which included the intervening petitioner's checks, was sent to the Federal Reserve Bank at Chicago that the Federal Reserve Bank and the Ridgely-Farmers bank then became the agents of the intervening petitioner for the purpose of collection and remittance of the checks in the amount of $1,666, and that when this draft was presented by the Federal Reserve Bank of Chicago to The First National Bank of Chicago, the $6,000 credit upon the books of The First National Bank in favor of the Divernon State Bank thereby became impressed with a trust, in favor of the intervening petitioner; and it is further urged that by the indorsement on the checks of the words "for collection and remittance" it was contemplated that a fiduciary relationship was thereby created, and that this is the normal way in which to retain control of negotiable instruments in the hands of agents.

Ill. State Bar Stats. 1935, ch. 98, § 184 (¶ 206); Jones Ill. Stats. Ann. 89.206, provides as follows: "A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act are applicable to a bill of exchange payable on demand apply to a check." And by the terms of par. 210, same chapter, it is provided: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless

and until it accepts and certifies the check." There is ample authority that when one accepts a check or bill of exchange he becomes a creditor, and the person or bank upon whom the check or bill of exchange is drawn becomes a debtor, and the relationship of debtor and creditor is established.

The only question presented in this case is a legal one and that is whether or not the appellant, L. H. Reichert, was a creditor of the bank or whether there had been such a change in their relationship that the funds of the Divernon State Bank in the hands of the Receiver are impressed with a trust in his favor. In the very recent case of *People v. Union Bank & Trust Co.,* 362 Ill. 164, in an opinion released after this appeal was prosecuted, the court definitely held that a draft drawn by a State Bank upon its correspondent bank in the clearing of balances and check items did not create or constitute a preferred claim upon the assets of the insolvent bank where it closed prior to the payment of the draft. On page 166 the court said:

"The appellant, Arthur E. Crum, as receiver of the First National Bank of Freeport, (hereafter called the National Bank,) filed a petition in the trial court, asking that he be allowed a preferred claim against the assets of the Union Bank and Trust Company, (hereafter called the State Bank,) an insolvent Illinois banking corporation. His claim was based upon a draft for $6,890.75 drawn by the State Bank upon the Continental Illinois Bank and Trust Company of Chicago in favor of the National Bank. The draft was issued for the balance due the National Bank for clearings between it and the State Bank as of March 2, 1933. The receiver of the State Bank filed his motion to strike the petition for a preferred claim on the ground that section 13 above referred to was unconstitutional. The preference was denied, the claim was allowed as a common claim, and the court found the section invalid because it is in conflict with the pro rata dis-

tribution provision requirement enacted by Congress and with the decisions of the United States Supreme Court, since the section attempts to control the distribution of the assets of insolvent National Banks.''

In this case the claim for preference was made by a depositor and not by a third party. It is difficult to see how a depositor could be a creditor of the bank and also have a preference upon its assets. In the case of *People v. Peoples Bank & Trust Co. of Rockford,* 353 Ill. 479, relied upon by appellant, the depositor had given his check upon his deposit to a third party, who presented the same to his local bank for collection and this bank mailed the check directly to the drawee bank with instructions to remit. Instead of remitting money, the drawee bank sent a draft on another bank to the local bank but the drawee bank failed before the local bank was able to collect on the draft.

The court held that the funds were thereby assigned to the third party and that the bank was the agent to collect for the payee and the check and the funds were impressed with a trust in favor of the third party. The draft in this case was simply an order on the First National Bank to pay the same and charge the amount against the funds of the Divernon State Bank. The transaction did not in any manner enhance or augment the assets of the bank. The bank made a bookkeeping entry charging the items to L. H. Reichert at the time it drew the draft and the relation of debtor and creditor as between Reichert and the bank still remained. The case of *People ex rel. Nelson v. Builders & Merchants Bank & Trust Co.,* 264 Ill. App. 388, is authority for stating that in such a situation there was merely a change in the form of indebtedness from that of a check to a draft upon the correspondent bank.

Based upon the reasoning of the authorities above cited the decree of the circuit court of Sangamon county is hereby affirmed.

*Affirmed.*