(No. 4810.   January 28, 1928.)

W. I. SKINNER, Appellant, v. E. W. PORTER, Commissioner of Finance of the State of Idaho, in Charge of the Bank of Hansen, a Corporation, and the BANK OF HANSEN, a Corporation, Respondents.

[263 Pac. 993.]

BANKS AND BANKING—INSOLVENCY—DEPOSITS FOR SPECIFIC PURPOSES —PROCEEDS OF CHECKS—TRUST FUNDS—PREFERRED CLAIMS—IN- TEREST—EXTENT OF PREFERENCES.

1.   Where checks drawn upon and accepted by bank represented payments which bank was required to remit to another bank, it became mere bailee of money represented by checks, and relationship of debtor and creditor did not arise between the two banks.

2.   Where money was delivered to bank for specific purpose of turning it over to another bank, but such purpose was not carried out because remitting bank became insolvent, equity will give rise to a constructive trust in favor of original owner of money or *cestui que trust*.

3.   The relation of principal and agent existing between bank collecting money under instructions to remit it to another bank and such other bank was not changed by mere act of remitting by cashier's check instead of sending cash.

4.   Where bank received deed from another bank, no reciprocal accounts or business relationship existing between them, with instructions to collect certain payments and remit them to such other bank, *held*, that on bank accepting payment of checks drawn upon itself a trust fund in favor of forwarding bank was created, which fund could be followed and recovered from Commissioner of Finance on bank becoming insolvent.

5.   It being presumed that in dispensing moneys in bank it exhausted its own funds before trust fund was invaded, *held*, that *cestui que trust* is entitled to preference, under Laws 1921, chap. 42, sec. 13, subd. 2, to whole amount of cash received by Commissioner of Finance on taking over bank such cash being less than amount of trust fund.

6.   On allowance of claim against assets of insolvent bank as trust fund, no interest will be allowed in absence of any showing that the money on which the claim is impressed has earned interest.

Argument for Appellant.

7. Where cash on hand in bank on its insolvency was less than trust fund, claimant under trust fund becomes general creditor as to amount of excess of trust fund over cash on hand.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Action to have sum of money declared to be a trust fund and given priority in payment of debts of insolvent bank as provided by Sess. Laws 1921, chap. 42, sec. 13, subd. 2. Judgment affirming classification of claim as contractual liability, under sec. 13, subd. 4, of the act, *supra*. *Reversed and remanded.*

Martin & Martin, for Appellant.

Where money is left with and accepted by a bank for a specific purpose the money does not become a part of the bank's assets, but the bank is holding such funds as trustee for the owner thereof. (*Hawaiian Pineapple Co. v. Browne,* 69 Mont. 140, 220 Pac. 1114; *Kimmel v. Dickson,* 5 S. D. 221, 49 Am. St. 869, 58 N. W. 561, 25 L. R. A. 309; *Massey v. Fisher,* 62 Fed. 958; *State v. Foster,* 5 Wyo. 199, 63 Am. St. 47, 38 Pac. 926, 29 L. R. A. 226; *Goodyear Tire & Rubber Co. v. Hanover State Bank,* 109 Kan. 772, 204 Pac. 992, 21 A. L. R. 677; *Northwest Lumber Co. v. Scandinavian-American Bank of Seattle,* 130 Wash. 33, 39 A. L. R. 922, 225 Pac. 825; *Fralick v. Coeur d'Alene Bank & Trust Co.,* 36 Ida. 108, 210 Pac. 586; *Stein v. Kemp,* 132 Minn. 44, 155 N. W. 1052.)

Publisher's Note.

2. Trust in proceeds of collection by insolvent bank, see notes in 32 L. R. A. 715; L. R. A. 1917F, 603. See, also, 3 R. C. L. 635.

4. Right and title to proceeds of paper deposited for collection, see note in 86 Am. St. 786. See, also, 3 R. C. L. 636.

See Banks and Banking, 7 C. J., sec. 260, p. 606, n. 86 New; sec. 282, p. 617, n. 72; sec. 301, p. 625, n. 76; sec. 548, p. 751, n. 78.

The giving of a check to a bank by a depositor thereof, who has sufficient funds to his credit in said bank to pay said check, for the purpose of taking up a deed held by the bank as trustee for third person, amounts to an augmentation. of the funds in the bank. (*Goodyear Tire & Rubber Co. v. Hanover State Bank, supra; Hawaiian Pineapple Co. v. Browne, supra; Northwest Lumber Co. v. Scandinavian-American Bank of Seattle, supra.*)

Where money held in trust by a bank is so commingled with the bank's assets that the trust fund becomes a component part thereof, courts will impress a charge or lien against the mass to the extent that the trust fund has entered into it. (*Russell v. Bank of Nampa*, 31 Ida. 59, 169 Pac. 180; *Martin v. Smith*, 33 Ida. 692, 197 Pac. 823; *Kimmel v. Dickson, supra.*)

Stephan & North, for Respondents.

Where one bank collects money for another bank the relationship of principal and agent exists until the collection is made and when the collection is made that relationship is immediately changed to one of debtor and creditor. (1921 Sess. Laws, chap. 42, p. 13; 1 Morse on Banks and Banking, sec. 248; 3 R. C. L. 636; 7 C. J. 616; 24 A. L. R. 1152; *Fralick v. Coeur D'Alene Bank & Trust Co.*, 36 Ida. 108, 210 Pac. 586; *In re Citizens State Bank of Gooding*, 44 Ida. 33, 255 Pac. 300; *Guymon-Petro Merc. Co. v. Farmers State Bank*, 120 Kan. 233, 243 Pac. 321; *National Bank v. Porter*, 44 Ida. 514, 258 Pac. 544.)

Where one draws a check against an account in a bank to pay a collection held by such bank the funds of that bank are not augmented by such payment. (*Goodyear Tire and Rubber Co. v. Hanover State Bank*, 109 Kan. 772, 21 A. L. R. 677, 204 Pac. 992, 24 A. L. R., p. 1157, and note.)

When a bank collects money for another bank without specific instructions to the contrary the collecting bank is presumed and is entitled to act in conformity with well-known and established banking customs. (*Bacon v. State*

*Bank of Kamiah,* 41 Ida. 518, 240 Pac. 194; *Commercial Bank v. Armstrong,* 148 U. S. 50, 13 Sup. Ct. 533, 37 L. ed. 363; 3 R. C. L. 633, 636; *In re Citizens State Bank of Gooding, supra.*)

BUDGE, J.—On October 20, 1922, appellant contracted to sell to one Summitt a certain tract of land, for $6,000. The agreement, in writing, called for the payment by Summitt of $500 in cash on the execution of the contract, which was paid; $2,000 in cash to be paid within ten days after receipt of abstract showing good title to the land; $500 on or before one year from date; and $500 on or before two years from date, said two payments of $500 each to be evidenced by notes and secured by a mortgage on the premises; and the remaining $2,500 of the purchase price to be paid by Summitt assuming a first mortgage on said premises in that amount.

At the time the contract was entered into, appellant was a resident of Kuna, Ada county, and the purchaser, Summitt, resided at or near Hansen, Twin Falls county, and it was agreed between them that appellant should have deed to the property prepared and abstract continued and send the same to Summitt for examination, and that if the title as shown by the abstract was good, Summitt was to pay the $2,000 in cash and give a mortgage on the premises to secure the payment of the two $500 notes to be executed by him. Deed conveying the property to Summitt was prepared and duly executed, and abstract made, and on December 1, 1922, appellant, through the Kuna State Bank, doing business in Kuna, forwarded to the Bank of Hansen, doing business in Hansen, said deed, with instructions to the Bank of Hansen to deliver the same to Summitt upon the payment of said sum of $2,000 in cash and the execution of the two notes for $500 each, and mortgage, as above stated, and instructed the Bank of Hansen to remit the said $2,000 to the Kuna State Bank, together with the two notes for $500 each and mortgage securing the same.

On December 12, 1922, the purchaser of the property, Summitt, paid to the Bank of Hansen the sum of $2,500 and also delivered to said bank his promissory note in the. sum of $500, together with a mortgage upon the premises securing the note. Summitt made the $2,500 payment by delivering to the Bank of Hansen his check, drawn upon said bank, in the sum of $2,494.90, and $5.10 in cash. In order to have sufficient funds to his credit in the Bank of Hansen with which to make the payment as above set out, Summitt did, on December 6, 1922, deposit with the Bank of Hansen a check for $425, drawn on the First National Bank of Twin Falls, and on December 12, 1922, he deposited in the Bank of Hansen a check for $639.85, drawn on the Twin Falls Bank & Trust Company, and on the same date deposited a check of the Utah Construction Company for $100. These three checks were collected by the Bank of Hansen, and by their collection and deposit Summitt had sufficient money in the Bank of Hansen to pay the said sum of $2,500. Summitt was a regular customer of the Bank of Hansen and had carried a checking account with the bank for at least six months.

On December 15, 1922, Summitt made a further payment on his contract with appellant by delivering to the Bank of Hansen a check for $300, drawn on said bank, which the Bank of Hansen credited upon the note for $500. For the purpose of having sufficient funds in bank to pay this $300 check, Summitt, on December 16, 1922, deposited with the. Bank of Hansen a check of the Utah Construction. Company for $100, which check was collected by the Bank of Hansen.

On December 13, 1922, the Bank of Hansen mailed. its cashier's check in the sum of $2,494.90 to the. Kuna State Bank to cover the $2,500 payment made by Summitt on the contract, and on December 16, 1922, the Bank of Hansen mailed its cashier's check, in the sum of $300, to the Kuna State Bank, to cover the $300 payment made by Summitt on the note for $500.

Both the Kuna State Bank and the Bank of Hansen were members of the Federal Reserve system, and, immediately upon receipt by the Kuna State Bank of the two cashier's checks above referred to, they were indorsed and forwarded for collection through the Salt Lake City branch of the Federal Reserve Bank of San Francisco. This was the usual method of clearing such checks by members of the Federal Reserve system in southern Idaho. The Bank of Hansen was during this time the only bank in the town of Hansen, and the Kuna State Bank had no correspondent bank in Twin Falls county. The two banks had no business connections whatever. Neither had appellant ever had any business dealings with the Bank of Hansen. The acts of the Kuna State Bank in the matter were done as the agent of appellant.

Before the two cashier's checks had been returned to the Bank of Hansen, it had suspended business and had been taken in charge by the Commissioner of Finance, who, when the checks were presented, refused payment thereon. On the day the Bank of Hansen suspended business and was taken in charge by the Commissioner of Finance, December 19, 1922, it had on hand in cash the sum of $2,046.01, which was among the assets delivered over to the Commissioner of Finance.

Appellant thereafter duly filed a claim with the Commissioner of Finance requesting that the amount of the two cashier's checks of the Bank of Hansen, aggregating $2,794.90, be classified and paid as a trust fund, under the provisions of Sess. Laws 1921, chap. 42, sec. 13, subd. 2. The Commissioner of Finance refused to allow the claim as a trust fund, but did allow the same under subd. 4 of sec. 13 of the act, *supra*, as a contractual liability. Feeling himself aggrieved at the refusal of the Commissioner of Finance to allow the claim as requested, appellant brought an action in the district court to have the said sum of $2,794.90 declared and decreed to be a trust fund and paid to him as of the priority provided under subd. 2 of sec. 13

of chap. 42, *supra.* The cause was submitted to the trial court on the facts as outlined above, most of which were stipulated, and after its submission the trial court made findings and conclusions affirming the classification of appellant's claim as made by the Commissioner of Finance, and judgment was entered accordingly. From such judgment this appeal is prosecuted.

[1, 2] When Summitt drew his checks upon the Bank of Hansen and they were accepted by the latter, they represented payments made to the Bank of Hansen as agent for the Kuna State Bank, and with reference to such payments the Bank of Hansen had but a single duty to perform, namely, to remit the same to its principal. Title to the money represented by the checks no longer remained in the Bank of Hansen, and it became a mere bailee. The relationship of debtor and creditor between the Bank of Hansen and the Kuna State Bank did not arise by reason of the transaction. (*Stein v. Kemp,* 132 Minn. 44, 155 N. W. 1052.) The essential thing to be noted is that this money was delivered to the Bank of Hansen for a specific purpose, that is, to be turned over to the Kuna State Bank. Because that purpose was not carried out, equity, in order to prevent a fraud, will give rise to a constructive trust in favor of the original owner of the money, or the *cestui que trust.* (*Kimmel v. Dickson,* 5 N. D. 221, 49 Am. St. 869, 58 N. W. 561, 25 L. R. A. 309; *Peak v. Ellicott,* 30 Kan. 27, 1 Pac. 499; *Capital Nat. Bank v. Coldwater Nat. Bank,* 49 Neb. 786, 59 Am. St. 572, 69 N. W. 115; *Northwest Lumber Co. v. Scandinavian American Bank,* 130 Wash. 33, 39 A. L. R. 922, 225 Pac. 825; *Southern Exch. Bank v. Pope,* 152 Ga. 162, 108 S. E. 551.)

In *Fralick v. Coeur D'Alene B. & T. Co.,* 36 Ida. 108, 210 Pac. 586, a somewhat similar state of facts was involved as in this case. The court held on other grounds that a trust was not created, but said:

"If a bank accepts a deposit from A, under an agreement to pay it to B, the contract is one for the benefit of B.

It has been held that such a contract creates a trust relationship in favor of B, and that in case of insolvency of the bank the trust relationship will be recognized and B is entitled to recover the trust fund if it can be traced into the assets of the bank. (*Woodhouse v. Crandall,* 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385.) We think this rule is correct if B did not consent that the deposit should be considered as one for his credit."

[3, 4] There were no reciprocal accounts existing between the Bank of Hansen and the Kuna State Bank. If there had been, the Bank of Hansen might have merely credited the Kuna State Bank with the amount of its collections, and the relation of the two banks would have been that of debtor and creditor, in the absence of express instructions to remit. But the banks were total strangers so far as such business relations were concerned, and the deed was forwarded to the Bank of Hansen with instructions to make collection from Summitt and remit to the Kuna State Bank. Clearly, therefore, the Bank of Hansen was not authorized to retain the proceeds in its hands, and acted only as agent for the Kuna State Bank. (*National Life Ins. Co. v. Mather,* 118 Ill. App. 491; *Plano Mfg. Co. v. Auld,* 14 S. D. 512, 86 Am. St. 769, 86 N. W. 21; 5 Thompson on Corporations, 7097.) Nor would it be sound to hold that the relation of principal and agent would change by the mere act of remitting by cashier's checks instead of sending the cash. This would be compelling the Kuna State Bank to have become a creditor only of the Bank of Hansen, whether such were desired or not. The record permits of no other conclusion than that the Kuna State Bank intended the Bank of Hansen to do no more than to make collection of the amount due on the contract and remit the proceeds, without any desire on the part of the Kuna State Bank to become a mere creditor of the collecting bank; and that, by purporting to act under these instructions, the Bank of Hansen was the agent of the forwarding bank and was in duty bound to pay to the latter the

amount represented by the checks drawn upon it by Summitt, who had sufficient funds to his credit to pay the same. Equity regards that as done which ought to be done, and when the Bank of Hansen presented Summitt's checks to itself and collected the same, it held the proceeds as agent for the Kuna State Bank and in trust for the Kuna State Bank.

Had Summitt presented his checks to the Bank of Hansen and received cash therefor, then handed the cash back to the bank to be forwarded to the Kuna State Bank, and the same was intermingled with the moneys of the Bank of Hansen, it must be conceded that such money would not have been an asset of the Bank of Hansen although it would have augmented the funds that came into the possession of the receiver. But the situation was not altered by reason of the fact that the Bank of Hansen received checks drawn on it instead of cash (*Goodyear Tire & Rubber Co. v. Hanover State Bank,* 109 Kan. 772, 21 A. L. R. 677; 204 Pac. 992; *State Nat. Bank v. First Nat. Bank,* 124 Ark. 531, 187 S. W. 673; *Union State Bank v. Peoples State Bank,* 192 Wis. 28, 211 N. W. 931; *State v. Grills,* 35 R. I. 70, 85 Atl. 281), since the money represented by the checks was actually in the bank, and it recognized its liability to the drawer thereof and reduced its indebtedness to him by executing its cashier's checks for the same amounts and forwarding the same to the Kuna State Bank. This while the Bank of Hansen was a going concern, and when the Commissioner of Finance took charge of the bank it owed Summitt the total of his two checks drawn upon it less than it had owed him before the checks were drawn, and obtained thereby such sum which belonged to the Kuna State Bank.

The decisions of the courts throughout the country upon questions analogous to the one under consideration are greatly at variance, but the holding that appeals most strongly to us is that, when the Bank of Hansen received the deed from the Kuna State Bank with instructions to collect payment under the contract between Summitt and

appellant and remit to the Kuna State Bank, by assuming to act thereunder the Bank of Hansen became the agent of the Kuna State Bank for this specific purpose; and, having assumed the relation of agent, the Bank of Hansen could not, by mingling with its own funds the money paid by Summitt, and which, after its collection, belonged to the Kuna State Bank, divest the latter of its title thereto or change the relation of principal and agent existing between the two banks to that of creditor and debtor.

It is quite generally held that when a bank receives paper for collection and remittance, from a stranger, who is not a depositor of the collecting bank, or between whom there are no reciprocal accounts, and accepts in payment a check or checks drawn upon itself, a trust fund in favor of the drawer or forwarding bank is thereby created, which fund may be followed and recovered from the receiver or assignee of such bank if the latter shall become insolvent. (*Hawaiian Pineapple Co. v. Browne,* 69 Mont. 140, 220 Pac. 1114; *State Nat. Bank v. First Nat. Bank, supra; Goodyear Tire & Rubber Co. v. Hanover State Bank, supra; Bank of Poplar Bluff v. Millspaugh,* 213 Mo. 412, 47 A. L. R. 754, 281 S. W. 733; *Rainwater v. Federal Reserve Bank,* 172 Ark. 631, 290 S. W. 69; *People ex rel. Russell v. Iuka State Bank,* 229 Ill. App. 4.) There is no difference in principle where a draft is forwarded to a bank for collection and the collection made, and where a deed is forwarded, as in the instant case, with instructions to collect payment under a contract and remit. In neither case does the title to the amount of the collection vest in the collecting bank, but vests in the party for whom the collecting bank acts as agent.

[5–7] The amount of cash on hand in the Bank of Hansen delivered over to the Commissioner of Finance on the closing of the bank was less than the amount of the trust fund, and it will be presumed that in dispensing moneys in the bank it began upon its own funds first and continued until they were exhausted before the trust fund was invaded. (*Hawaiian Pineapple Co. v. Browne, supra;*

*Kansas Flour Mills Co. v. New State Bank of Woodward,* 124 Okl. 185, 256 Pac. 43; *State v. Foster,* 5 Wyo. 199, 63 Am. St. 47, 38 Pac. 926, 29 L. R. A. 226.) Accordingly, appellant is entitled to be given preference, under Sess. Laws 1921, chap. 42, sec. 13, subd. 2, to the whole amount of cash received by the Commissioner of Finance when he took charge of the affairs of the Bank of Hansen, it not appearing that any lower balance was reached between the time of making the collections and the closing of the bank, and such sum so received by the commissioner being less than the amount of the trust. In the absence of any showing that the money has earned interest, no interest will be allowed. Appellant becomes a general creditor as to that amount of his claim in excess of the sum in cash turned over to the Commissioner of Finance.

We are not unmindful of the conclusions reached in *In re Citizens' State Bank,* 44 Ida. 33, 255 Pac. 300, and *National Bank of the Republic v. Porter,* 44 Ida. 514, 258 Pac. 544, but we are of the opinion that the views herein expressed are in accord with what is the better reasoning and the greater weight of authority, and in so far as the decisions in the two cases mentioned are in conflict with the holding herein, they are overruled.

The judgment is reversed and the cause remanded, with directions to the trial court to enter judgment in accordance with the views herein expressed. Costs to appellant.

Givens, Taylor and T. Bailey Lee, JJ., concur.

WM. E. LEE, C. J., Dissenting.—There is nothing in this case to justify a departure from the rule announced in *In re Citizens' State Bank,* 44 Ida. 33, 255 Pac. 300, and followed in *National Bank of the Republic v. Porter,* 44 Ida. 514, 258 Pac. 544. On the authority of those decisions, I dissent.

Petition for rehearing denied.