(No. 6019.   October 31, 1933.)

ELVIRA IVIE, Appellant, v. W. G. JENKINS AND COM-
PANY, BANKERS, a Corporation, BEN DIEFEN-
DORF, Commissioner of Finance of the State of Idaho,
R. A. STRUNK, Liquidating Agent of W. G. JENKINS
AND COMPANY, BANKERS, and BEN DIEFEN-
DORF and R. A. STRUNK, Respondents.

[26 Pac. (2d) 794.]

Carl C. Christensen, for Appellant.

Harold Holden and Solon B. Clark, for Respondents.

MORGAN, J.—Prior to June 24, 1929, appellant purchased from, or through the agency of, respondent, W. G. Jenkins and Company, Bankers, hereinafter referred to as the bank, a $1,000 Australian government bond. The bank was represented in the transaction by D. V. Archbold, its cashier. The bond was not delivered to appellant, but was retained by the bank and when interest on it became due it was credited to the joint checking account of appellant and her husband. On June 24, 1929, during banking hours, appellant went to the bank, found Mr. Archbold, its cashier, in charge of its business, and stated to him she had another $1,000 with which she wished to purchase another Australian bond exactly like the first one. To this Mr. Archbold replied: "Fine, I will give you a receipt." Appellant delivered to him, through the wicket where deposits were usually made, $1,000 in currency and received from him a receipt written, except the printed letter-head, and signed by him, as follows:

"C. C. Davidson, President.          D. V. Archbold, Cashier.
                      "Member
                 "Federal Reserve
                      "System
           "W. G. Jenkins & Co., Bankers   92–113
         "Capital and Surplus Thirty Thousand Dollars
                   "Mackay, Idaho
                                    "June 24–1929.
   "Received of Elvira Ivie One Thousand Dollars to be used to purchase $1000–Government of Australia Bond.
                            "W. G. JENKINS & CO.
                            "D. V. ARCHBOLD
                                      "Cashier.
"Temp.
"Receipt."

The money so used by appellant was her separate property.

Thereafter the interest payments received by appellant and her husband, through the bank, were double the amount which had been paid theretofore on one bond.

On or about March 12, 1932, the bank was placed in the possession and under the control of the commissioner of finance, and it has ever since been in possession and control of that official and its assets are being liquidated with a view to discharging its obligations.

Appellant went to the bank about a week after it failed and demanded her bonds from Mr. Wheeler, who was introduced to her by Archbold as the bank examiner. Wheeler told her he would like to talk to her husband before delivering the bonds. In the afternoon of that day she again went to the bank and Wheeler produced and offered to her two bonds, with her name written on them, one an Australian bond for $1,000, and the other a Peruvian bond of the face value of $1,000, but which was shown to have a market value of about $60. This is the first time appellant had seen either of the bonds, or knew her second $1,000 had not been invested as directed.

It was stipulated that on June 24, 1929, there was in the bank, and at the close of business on that day there remained therein, a sum, in cash, in excess of $1,000; that from day to day thereafter until it failed there remained in the bank, in cash, at all times, in excess of $1,000, and there came into the hands of the commissioner of finance and of the liquidating agent a sum, in cash, in excess of $1,000.

In due time appellant filed a claim with the liquidating agent, against the bank, for the $1,000 delivered to it for the purpose of purchasing the second Australian bond, and asked that its assets be impressed with a trust in her favor in that amount, being a claim for classification specified in I. C. A., sec. 25–915, subd. 2. She also filed with the liquidating agent a claim against the bank for the delivery to her of the Australian bond which was purchased for her by it and which came into possession of the liquidating agent when it failed. The liquidating agent disallowed the claim

for the $1,000, refusing to give it any classification, and on the same day wrote appellant the following letter with respect to her claim for possession of the bond, ownership of which was not in controversy:

"Mackay, Idaho,
"May 28th, 1932.

"Elvira Ivie,
     "Mackay, Idaho.
"Dear Madam:

"In reply to your request for the Australian bond in this bank for safekeeping, my instructions are to the effect that I cannot release this bond without delivering the other papers belonging to you and in our care.

"W. G. JENKINS & CO., BANKERS,
"By R. A. STRUNK,
"Liquidating Agent."

Thereafter this action was commenced by appellant to recover the $1,000 placed with the bank to purchase for her an Australian bond and not used for that purpose, and praying that her claim therefor be given a classification as for funds held in trust by the bank and, as a second cause of action, for the recovery of possession of the $1,000 bond, or the value thereof, purchased from the bank, or by it for her and with her money and retained in its possession.

The trial was to the court, without a jury, and resulted in a judgment denying appellant a classification of her claim for $1,000 under I. C. A., sec. 25–915, subd. 2, and awarding her judgment on said claim for $1,000 "to be paid as the contractual liability of said bank *pro rata* with other contractual liabilities, if any, under subdivision 4 of section 25–915 of the Idaho Code Annotated of 1932." On the second cause of action the judgment was in favor of appellant for the $1,000 bond which the bank had purchased and held for her, together with all the coupons thereto attached. This appeal is from that portion of the judgment denying appellant's right to a preference or trust claim under sec. 25–915, subd. 2, and allowing her claim as a contractual liability, only, under subd. 4 of said section.

"A deposit is complete when the money passes from the possession of the depositor into the possession of an agent of the bank, within the bank, and during banking hours. The bank cannot escape liability because the deposit was not received by the receiving teller. The payment of a deposit to anyone serving behind the counter of a bank is valid; and if he retains the money for his own use his bank is liable. The same principle applies to a bank whose officers receive special deposits of bonds and other securities." (7 C. J., p. 637, sec. 318.)

"A deposit may be for a specific purpose, as where money or property is delivered to the bank for some particular designated purpose, as a note for collection, money to pay a particular note or draft, etc. While such a deposit is sometimes termed a 'special deposit' and partakes of the nature of a special deposit to the extent that title remains in the depositor and does not pass to the bank, yet it seems more accurate to look on this as a distinct class of deposit. In using deposits made for the purpose of having them applied to a particular purpose, the bank acts as the agent of the depositor, and if it should fail to apply it at all, or should misapply it, it can be recovered as a trust deposit." (7 C. J., p. 631, sec. 307. See, also, Michie on Banks and Banking, vol. 5, p. 638.)

The placing of the $1,000 in the bank with which to purchase an Australian bond was a deposit for that specific purpose, and when the bank failed to purchase the bond the money remained the property of appellant and was held in trust for her by the bank. (*Skinner v. Porter*, 45 Ida. 530, 263 Pac. 993, 73 A. L. R. 59.)

Respondent insists there is no evidence that the money in question went into the bank or augmented its assets or came into the hands of the commissioner of finance, and that in the absence of such a showing the assets of the bank cannot be impressed with a trust in favor of appellant.

The undisputed evidence shows the money was delivered by appellant to the cashier of the bank, in its place of business, during banking hours, and that, acting for the bank,

he received and receipted for it in his official capacity for the specific purpose of buying an Australian bond for appellant. There is no evidence that the money, or any part of it, ever passed out of the bank. Neither party offered to prove what became of the money after it went into the bank and, so far as the record discloses, there is nothing in the bank's books showing what became of it. Undoubtedly appellant has established, as a fact, that her money was received by the bank and it is immaterial what bookkeeping entry was made with respect to it, or whether any was made. If an entry was made showing the money had been deposited or used in violation of appellant's instructions, it would not change the nature of the transaction.

"The fact, if it be one, that the money was not credited upon the books of the bank, does not change the nature of the transaction, nor relieve the bank from the liability which its managing officer assumed. The neglect of the officers of the bank in this respect cannot prejudice the rights of anyone interested in the deposit." (*American Nat. Bank of Arkansas City et al. v. Presnall,* 58 Kan. 69, 48 Pac. 556. See, also, *Russell v. Bank of Nampa, Ltd.,* 31 Ida. 59, 169 Pac. 180; *County of Blaine v. Fuld,* 31 Ida. 358, 171 Pac. 1138.)

As heretofore pointed out, cash in excess of the $1,000 belonging to appellant remained in the bank from the time she placed her money there until it failed, and an amount in excess of that belonging to her came into the hands of the commissioner of finance and the liquidating agent. The bank being in possession of money which belonged to it, as well as money which belonged to appellant, will be presumed to have paid out its own money in meeting its obligations rather than that of appellant. (*Skinner v. Porter,* 45 Ida. 530, 263 Pac. 993, 73 A. L. R. 59.) It follows that the sum of money found in the bank's possession by the commissioner of finance and the liquidating agent contains the funds held in trust by it for appellant, and that she is entitled to have her claim for $1,000 classified

and paid as directed in I. C. A., sec. 25–915, subd. 2, which provides:

"The order of payment of the debts of a bank liquidated by the commissioner shall be as follows: . . . .

"2. All funds held by bank in trust."

Respondent further insists that since appellant is a married woman and the money deposited by her with the bank for the purpose of purchasing the bond was her separate property, the relation of trustee and *cestui que trust* cannot exist between the bank and her because only a trust company may act as trustee for a married woman, and the bank in question is not a trust company.

We do not find it necessary to determine whether or not commercial banks may engage in the business of acting as trustees for married women. This is a resulting trust and neither the bank nor its representatives will be permitted to take advantage of its misappropriation or misapplication of the money placed with it by appellant for a specific purpose. Furthermore, the defense that it is beyond the powers of the bank to act as trustee for appellant was not raised in the lower court. In the answer it is alleged that the $1,000 in question was the community property of appellant and her husband, and a defense inconsistent with that made in the district court cannot be urged for the first time here. (*Milner v. Earl Fruit Co.*, 40 Ida. 339, 232 Pac. 581; *Boise Payette Lbr. Co. v. Bales*, 52 Ida. 762, 20 Pac. (2d) 214; *Peterson v. Universal Automobile Ins. Co., ante*, p. 11, 20 Pac. (2d) 1016.)

The cause is remanded to the district court, with instruction to modify the judgment to conform to the views herein expressed. Costs are awarded to appellant.

Budge, C. J., Givens and Wernette, JJ., and Downing, D. J., concur.