THE TOLEDO TRUST CO. *v.* FULTON, SUPT. OF BANKS.

(Decided May 6, 1935.)

*Messrs. Logan & Daugherty,* for plaintiff.

*Mr. John W. Bricker,* attorney general, *Messrs. Brown & Sanger* and *Mr. S. M. Douglas,* for defendant.

OVERMYER, J.   This case was submitted to this court on appeal from a decree in favor of The Toledo Trust Company, plaintiff in the Court of Common Pleas, where the case was submitted on an agreed statement of facts, which also constitutes the evidence in this court.   These agreed facts, briefly, are as follows:

In July, 1931, the Spicer Manufacturing Corporation of Toledo, drew and issued a check for $1,710.55 on The Ohio Savings Bank & Trust Company, and forwarded the same to the payee in England.   The payee banked the check, and it came through various banks to the Federal Reserve Bank at Cleveland, Ohio, and by said bank was negotiated and transferred to The Toledo Trust Company, the plaintiff herein.   The

check reached plaintiff on August 15, 1931, and on that day plaintiff paid said Federal Reserve Bank the face of the check and thereby became the owner of it in due course.

On August 15, 1931, the plaintiff presented the check to The Ohio Savings Bank & Trust Company, upon which it had been drawn, at its banking house in Toledo, and said Ohio Savings Bank & Trust Company accepted the check and charged the amount thereof to the account of the Spicer Manufacturing Company in that bank, which account was then more than sufficient to cover the same, and on the same day, for the purpose of paying said Spicer Manufacturing Company check, the bank issued and delivered to plaintiff, The Toledo Trust Company, a written order known as a "balance check" signed by the teller, representing the face of the Spicer Manufacturing Company check, which written order or "balance check" was accepted by the plaintiff. The plaintiff was unable to present said written order or "balance check" to the Clearing House Association of Toledo on the 15th, it being Saturday and the hours of business of said Clearing House Association having expired.

On Monday, August 17, 1931, The Ohio Savings Bank & Trust Company had been closed by order of its Board of Directors, and was in charge of Ira J. Fulton, state superintendent of banks, and on that date the plaintiff presented said written order or "balance check" to the Superintendent of Banks in charge of The Ohio Savings Bank & Trust Company, and demanded payment, which was refused. The Toledo Trust Company, plaintiff herein, has never been paid the amount of said Spicer Company check, and claims a preference by virtue of the provisions of Section 712, General Code.

It appears also from the agreed statement of facts that the written orders known as "balance checks"

were used by the banks of the city of Toledo; were issued only to other financial institutions; were ordinarily issued only for the purpose of paying items drawn upon the issuing bank and were presented directly to the issuing bank for payment when received by the presenting bank too late to be included in the Clearing House transactions of that day. It appears also that at all times herein referred to The Ohio Savings Bank & Trust Company maintained an account known as a "balance check account," to which account was credited an amount equal to each "balance check" issued by it, which account was debited with the amount of its "balance checks" paid by it, and that said "balance checks" were used as a matter of convenience in transacting business between banks and to avoid the necessity of exchanging currency with other banks.

Section 712, General Code, provides as follows:

"In any case where any bank incorporated under the laws of this state or any unincorporated bank doing business in this state, shall have had presented to it for collection and payment a check drawn by a depositor in such bank or unincorporated bank who at the time of the presentation thereof for collection and payment has on deposit a sum equal to the amount of such check, if such bank or unincorporated bank shall charge to the account of such depositor the amount of such check but shall thereafter be closed for business by the superintendent of banks of Ohio or by action of its board of directors or by any other proper legal action before payment shall have been made of such check, the charging of such check to such depositor's account shall constitute an appropriation by such bank or unincorporated bank of the assets of such bank or unincorporated bank to the payment thereof and shall impress such assets with a trust in behalf of the owner of such check and entitle such owner to payment

thereof upon liquidation of the assets of such failed bank as a preferred claim.''

The question presented to us is, therefore, whether the transaction here involved comes within the provisions of the foregoing section, that is, did the Ohio bank close *before payment was made* of the Spicer Manufacturing Company check? This question can be answered only by determining whether the issuance of the so-called ''balance check'' constituted a payment under the statute. If the answer is in the affirmative, that is, that said bank closed before payment of the Spicer Company check, then by virtue of said section the charging of such check to the depositor's account constituted an appropriation the moment the charge was made to the depositor's account of sufficient money of the assets of the bank to pay such check, and makes it a preference.

Outside of Ohio we find but few jurisdictions in which, by specific statutes such as we have in Sections 711 to 714, General Code, provision is made defining the rights of parties in interest in the process of the collection and payment of checks. We do find, however, that the problem has been dealt with by the courts in most jurisdictions, and that two methods of approaching its solution have been evolved. In one group, paper issued by the collecting bank, such as the Ohio bank in this case, to the payee or holder of the check for its proceeds collected by such bank, gives rise to the relationship of debtor and creditor between the bank and the holder of the check collected. The expressed reasoning of this method is that the assets of the collecting bank are not augmented by the operation of charging its depositor's account with the check and then issuing its own paper, either cashier's check or draft, to the owner; and therefore the owner of the check only takes the place of the drawer of the check who was but a creditor of the bank,

The other group of jurisdictions seeks to make the position of the holder of the check more secure, thereby to encourage the freer use of commercial paper. This is accomplished by treating the collecting bank, the Ohio bank here, as the agent for the owner of the check, and when the check has been received by the collecting bank and charged to its depositor's account, a trust is impressed upon the proceeds of the check as long as they remain a part of the general assets of the bank. The reasoning of this group of courts is that when the depositor's account has been charged with the amount of the check, the proceeds become a part of the general assets of the bank, which are thereby augmented by such operation. To accomplish this purpose of greater security to the check owner the trust thus impressed continues until the proceeds are actually withdrawn, even though a cashier's check or a draft is issued by the collecting bank to the owner of the check or his agent. A typical and well-reasoned statement of the trust relationship view is found in *Skinner* v. *Porter, Commr. of Finance,* 45 Idaho, 530, 263 P., 993, 73 A. L. R., 59, by which it is pointed out that an attempted payment of a check by a cashier's check upon the collecting bank does not impair the trust.

The cases in which these two different processes of treating this kind of a situation are collected are to be found in the annotations in 24 A. L. R., 1152; 42 A. L. R., 754; 47 A. L. R., 761; 73 A. L. R., 66, and 77 A. L. R., 473.

From an examination of these decisions it is manifest that the purpose of the Ohio Legislature when it enacted Sections 711 to 714, General Code, was to place Ohio definitely in the latter mentioned group of jurisdictions, and thereby afford greater security and freedom in the use of checks in commercial transactions.

Such is the title of the legislation, 112 Ohio Laws, 238 (1927), which reads:

"To expedite and simplify the payment of checks and to provide for return of unpaid checks drawn on closed banks * * *."

This is recognized by the Supreme Court in *Fulton, Supt. of Banks,* v. *B. R. Baker-Toledo Co.,* 128 Ohio St., 226, 190 N. E., 459, 93 A. L. R., 933, especially by the comments of Judge Allen on page 234.

In our opinion the term "collection and payment," as used in the statute, applied here means collection from and payment by the Spicer Manufacturing Company of its check. To accomplish this, the Ohio bank was, under the trust idea of the statute, the agent for the owner of the check, the plaintiff, The Toledo Trust Company. That the owner, The Toledo Trust Company, was an indorsee of the check instead of the payee, does not change the relationship of the parties in interest. The trust company stood in the shoes of the payee, and it was a stranger to the debtor-creditor relationship between the Ohio bank and the Spicer company. In each of the following cases, *Fulton, Supt. of Banks,* v. *B. R. Baker-Toledo Co., supra; Fulton, Supt. of Banks,* v. *Randall,* 128 Ohio St., 205, 190 N. E., 457; *Fulton, Supt. of Banks,* v. *Schuky,* 128 Ohio St., 147, 191 N. E., 3; *Union Trust Co. of Dayton* v. *Republic Asphalt Paving Co.,* 128 Ohio St., 153, 191 N. E., 4, and *Union Trust Co. of Dayton* v. *Simpson,* 128 Ohio St., 154, 191 N. E., 4, the holder of the paper seeking preference was formerly a depositor and creditor of the bank, and having changed his deposit into a draft, or cashier's check to himself directly, or to another by whom it was turned back to him, sought to claim a preference, which was properly refused. That is not the case here. The trust company was an outsider to the debtor and creditor relationship. In the above cases the depositor was trying to get in by the rear

door when he had been refused admittance at the front door.

This being true, the principle seems clear that a check—be it a cashier's check, as in *Skinner* v. *Porter, Commr. of Finance, supra,* or a "balance check," as here issued—was not intended as actual payment to the owner of the check, but only as conditional payment until actual payment had been accomplished. An examination of the trust line of decisions leads to the reasonable conclusion that actual payment was contemplated by Section 712, General Code. Section 713, General Code, was intended to make it certain that when payment is attempted by the indirect method of a draft it shall not operate as such until actual payment has been accomplished.

If this conclusion is not correct, Section 712, General Code, is meaningless, as is contended by counsel for plaintiff. If actual payment is made in cash when presentment of the check is made, there is no occasion for the statute; if actual cash payment is not made, then almost any system of doing business would contemplate the giving to the owner of the check some paper as evidence of the amount due, which would be received by the owner of the check or his agent. If acceptance of such paper changed the holder of it into a creditor of the bank, as here claimed, again the statute would be meaningless and unnecessary. That the paper issued was in the form of a check and negotiable does not change this situation. Were it merely a non-negotiable letter of credit, the same argument could be made— that its receipt and acceptance changed the relationship between the bank and the holder to that of debtor and creditor. We cannot believe that the Legislature did a vain and useless thing in enacting Section 712, General Code.

There is no evidence before us that the plaintiff, The Toledo Trust Company, agreed to accept the "bal-

ance check'' in satisfaction of or in payment of the Spicer company check. The burden was on the defendant, the Superintendent of Banks, to prove acceptance or payment. 21 Ruling Case Law, 84, Section 88.

The charging of the amount of a check to the account of the depositor certainly does not constitute payment of the check. This is but the first step in the transaction of making payment of the check. The words in the statute, ''before payment shall have been made'' surely mean actual and final payment in cash or something of value. The giving of a check, even a regular, negotiable check for general use, is never payment of the debt unless the parties agree that it shall constitute payment. The ''balance check'' was not payment of the Spicer company check until it was actually paid, just as is true of any ordinary check payment. 48 Corpus Juris, 617, Section 50; *Hodgson* v. *Barrett,* 33 Ohio St., 63, 31 Am. Rep., 527; *Kinder* v. *Fishers National Bank,* 93 Ind. App., 213, 177 N. E., 904; *J. Weller Co.* v. *Washington Gordon & Co.,* 14 C. D., 407, 7 C. C. (N. S.), 303 (affirmed without report, 70 Ohio St., 489); *National Market Co.* v. *Maryland Casualty Co.,* 100 Wash., 370, 170 P., 1000; *Hilsinger* v. *Trickett,* 86 Ohio St., 286, 302, 99 N. E., 305, Ann. Cas., 1913D, 421; *Fleig* v. *Sleet,* 43 Ohio St., 53, 1 N. E., 24, 54 Am. Rep., 800, and authorities cited in opinion.

There is no claim made that the so-called ''balance check'' was preferred. Plaintiff's preference of claim arises because the Ohio bank did not make payment of the Spicer company check. It gave a paper, a conditional order, a ''balance check,'' for the ''purpose of paying it,'' but that purpose was not consummated, not accomplished, before the Ohio bank closed, and it was to meet situations such as this that Section 712, General Code, was enacted. It was enacted to prefer those who, after presenting a check for collection and

payment which was charged to the depositor's account, did not receive the money which the check evidenced.

It seems to us that the transaction here clearly comes within the provisions of the statute, and that the moment The Ohio Savings Bank & Trust Company accepted this Spicer Manufacturing Company check and charged it to the Spicer Manufacturing Company account, there was appropriated and impressed with a trust sufficient assets of the bank to pay the check, and the issuance of the so-called "balance check" or written order was not payment of the Spicer company check, but was not more than a receipt, a memorandum, a conditional promise to pay if and when the "balance check" should go through the Clearing House and be honored, or be presented to the bank that issued it. The issuing bank closed before it could be presented either to it or to the Clearing House.

As said by the court in *Bank of Poplar Bluff* v. *Millspaugh, Commr. of Finance,* 313 Mo., 412, 231 S. W., 733, 47 A. L. R., 754, where it is held that a draft issued in payment of a check drawn by a customer depositor on his account in the bank created a trust in assets of the bank until draft paid, even though Missouri has no statute on the subject:

" 'To hold otherwise would place a premium upon the arbitrary conduct of a banker, and permit him, when his bank is limping to its grave, to make fish of one depositor and fowl of another.' "

We are of opinion that the word "payment," as used in Section 712, General Code, means the same as that word generally means when used in law, viz., payment in money or something of value, and that the Ohio Savings Bank & Trust Company closed after the Spicer company check had been charged to the Spicer account, and before payment had been made thereof, and, further, that these facts bring the case within the provisions of Section 712, General Code, and that the

Court of Common Pleas was correct in entering a decree for the plaintiff. The decree will be the same as that pronounced in the Court of Common Pleas.

*Decree for plaintiff.*

CARPENTER, J., concurs.

LLOYD, J., dissenting. In tabloid, the essential and controlling facts as stipulated in the agreed statement of facts are as follows:

The Spicer Manufacturing Company of Toledo, Ohio, drew its check for $1710.55 upon its commercial account in The Ohio Savings Bank & Trust Company to the order of some one in England, who, upon its receipt, started its return to Toledo for collection and payment. It was transmitted through various banking institutions to the Federal Reserve Bank of Cleveland, from which The Toledo Trust Company then bought it outright, paying therefor to the Federal Reserve Bank the face value thereof, to wit, $1710.55. Thereby and thereupon The Toledo Trust Company became the absolute owner and holder thereof. On August 15, 1931, the day of its purchase and receipt, The Toledo Trust Company presented it to The Ohio Savings Bank & Trust Company for payment. The Ohio Savings Bank & Trust Company received, accepted and retained the check, charging the amount thereof to The Spicer Manufacturing Company account, which account was in excess of the amount of the check. The amount of the check having been so charged to the commercial checking account of The Spicer Manufacturing Company was at once credited by The Ohio Savings Bank & Trust Company to an account maintained by it, known as the "Balance Check Account." The Ohio Savings Bank & Trust Company then drew its check upon this latter account to the order of The Toledo Trust Company for $1710.55. The Toledo

Trust Company, upon presentment by it of the Spicer Manufacturing Company check, received and accepted the check of The Ohio Savings Bank & Trust Company drawn on its "Balance Check Account," "for the purpose of paying said Spicer Manufacturing Company check." The next day, August 16, was Sunday, and on Monday, August 17, before payment of The Ohio Savings Bank & Trust Company check, the defendant, Ira J. Fulton, the Superintendent of Banks, took possession of its assets and property for the purpose of liquidation.

If the charging of the Spicer check to the Spicer account is all-sufficient to make it a preferential claim, and The Ohio Savings Bank & Trust Company check is merely an order evidencing this fact, then regardless of how long prior to the closing of The Ohio Savings Bank & Trust Company the payee had received the Ohio Savings Bank & Trust Company check, might he not retain it for an indefinite time before presentment for payment without affecting his right to have the amount thereof declared a preference? Certainly the statute in question does not contemplate or justify any such conclusion.

Again we may ask whether, if the original payee of the Spicer check, instead of the subsequent purchaser of it, The Toledo Trust Company, had personally presented it to The Ohio Savings Bank & Trust Company for payment, and upon presentment thereof for that purpose had accepted, in lieu of cash, which he was entitled to demand, a check of The Ohio Savings Bank & Trust Company, which was not paid before the taking over of the property and assets of the Ohio bank for liquidation, he would be entitled to a preference? Or, if the Toledo Trust Company had endorsed or sold the check to Judge Overmyer, would he have been entitled, upon its presentment for payment, to have the amount thereof declared a preference? It seems to me

not, and I can discover no difference in right in this respect between the original payee and The Toledo Trust Company. To now call The Ohio Savings Bank & Trust Company check a mere conditional order or receipt after the transaction is completed for the purpose of accomplishing a desired object, or an appeal to an alleged custom among banks, to destroy its legal effect, can not make it anything more or less than what in fact it is.

On the facts in evidence I am unable to see how the Toledo Trust Company is entitled to a preference for the amount in question over claims of general creditors, and therefore dissent from the conclusion reached by the majority of the court.