**FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver of the Bank
of North Idaho, Substituted for the
Bank of North Idaho, Appellant,**

v.

**Merle C. MYHRE and Betty A. Myhre,
husband and wife, Appellees.**

**No. 15130.**

United States Court of Appeals
Ninth Circuit.

July 8, 1957.

McNaughton & Sanderson, W. F. Mc-Naughton, Coeur d'Alene, Idaho, Royal L. Coburn, Gen. Counsel, John L. Cecil, Asst. Gen. Counsel, Federal Deposit Insurance Corp., Washington, D. C., Graydon W. Smith, Atty. Gen., State of Idaho, for appellant.

Whitla & Knudson, E. T. Knudson, Coeur d'Alene, Idaho, for appellees.

Before STEPHENS, FEE and BARNES, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This suit, brought by the Myhres against the Bank of North Idaho, Inc., in the United States District Court, prayed recovery for specified personal property.

The appeal here was taken by the Federal Deposit Insurance Corporation[1] from the judgment of the District Court, which ordered that the money judgment therein granted "is entitled to the priority as a trust fund in the order of payment of the debts of the original defendant," and directed the Receiver, substituted for the original defendant, Bank of North Idaho,[2] to allow this priority.

From the record and findings made in the trial court, the facts below set forth are drawn. The Myhres borrowed Fifteen Hundred Dollars from the Bank on November 10, 1953. To secure the indebtedness, the Myhres gave a chattel mortgage to the Bank, which failed adequately to describe the property. The Myhres later gave a bill of sale to the Bank for a portion of this property. As an integral part of this last transaction, a written agreement between these parties was executed, which in part provided that the Bank was to sell the property at the best price obtainable, deduct the sums owing to the Bank, and turn the balance over to the Myhres. The property, delivered to the Bank on March 17, 1954, had a value of Eight Thousand Dollars. A demand for a report of the disposition of the property and an accounting was served on the Bank. When this demand was refused, suit was brought by the Myhres against the Bank in August, 1954.

■ The Receiver has not favored the court with any record of the date upon which the Bank became insolvent or when and by what orders and upon what conditions it was substituted for the Bank in this action as its Receiver.[3] It can only be assumed these events occurred after filing of the complaint and before trial. The suit must be treated as one against the Bank, not against a statutory receiver. It must be assumed that the Receiver voluntarily accepted substitution and gave the trial court jurisdiction over it. The mere fact that a federal agency has been designated Receiver under an Idaho statute[4] gives the Federal Deposit Insurance Corporation no special standing in a federal court.

Suffice it to say, this action was commenced against the Bank and proceeded to judgment against the Bank. The substitution of Receiver does not affect the power of the court to render judgment against the Bank. No statute has been called to our attention and no decision of the state court which abates a suit in a federal court against a Bank which has become insolvent after the filing of the complaint. Judgment, therefore, can be rendered against the Bank and enforced against the Receiver as far as the finding of trust is concerned. The Receiver was not required to submit himself voluntarily to the judgment of the court, but, having done so, it is not for this Court to say that the trial court cannot give the Receiver legal orders as a part of a lawful judgment.

■ The Receiver contends that the prayer of the pleading did not request the court to find a trust and a breach thereof. But there is no doubt the pleading stated facts sufficient to constitute a cause of suit for a declaration of a trust and a willful breach thereof. The Federal Rules of Civil Procedure, 28 U.S.C.A. were intended to sweep away all such technicalities so long as the substance remained as we find it did here.

■■ The case was tried upon that theory. The court concluded that the written agreement between the Myhres and the Bank created a trust. This is in

1. Hereinafter referred to as "Receiver."

2. Hereinafter referred to as the "Bank."

3. There is a recital in the transcript, at page 13: "Upon motion, an order was entered in these proceedings on the 14th day of July, 1955, substituting said receiver as party defendant, in place and in stead of the Bank of North Idaho."

4. Idaho Code, § 26–1403.

accordance with the great weight of authority.[5]

It is of great importance that here the Myhres conveyed the legal title of these chattels to the Bank. Simultaneously the agreement was entered, which provided in detail that the Bank was required to sell a portion of the property, pay the debt to it and return the balance of the proceeds and the goods remaining to the Myhres. An express trust was consensually created.

Thus the transaction was removed from the fields of bailment or even of mortgagee in possession after default. Even a bailee is a trustee if he be vested with power to exchange or to sell the personal property. The mortgagee who has taken possession of personal property after default is likewise held to be invested with fiduciary obligations. Whatever questions arise in the analogous situations, we need not be troubled with them since here there is a classic express trust.

■ Where an express trust is created, the person to whom the legal title is conveyed is invested with the confidence of the creator of the trust that he will faithfully apply the property conveyed to the purposes and uses designated. Confidence in the trustee by the creator is the distinguishing hallmark of express trust.

■ A clear line of demarcation is drawn between property thus held by a bank and deposits made by commercial customers therein. As to the latter, there is equally no question. Such a deposit creates a relation of debtor and creditor. However, if securities or funds are left with a bank for safekeeping only, the latter may be a mere bailee. Where a deposit is made in a bank for the purpose of paying a specific obligation, the bank is an agent,[6] and, if it fail to apply the funds as directed or misapply them, the money may be recovered as a trust deposit, even though the original deposit has disappeared or been wrongfully dissipated.[7]

Here, by the conveyance of these chattels, the Myhres created a trust.[8] They were not attempting to become creditors of the Bank. By selling or dissipating the property, the Bank could not magically evoke the relation of debtor and creditor between itself and the Myhres.

■ A trustee of property by express trust is compelled by the confidence imposed upon him to act in good faith and not only with such care and prudence that a person would exercise in disposing of his own property, but also with that caution to preserve the property which is enjoined upon such a fiduciary.[9] There was here no proof that the Bank used any precaution whatsoever. The trial court found the market value of the property at the time the Myhres entrusted it to this Bank, in confidence that the latter would explicitly carry out the terms prescribed. The Bank, as trustee, flagrantly violated the trust.

Here then we arrive at the last abatis of defense. It is said there is no specific money in possession of the Federal Deposit Insurance Corporation which can be traced to the sale of this specific property which the Bank held in trust, and therefore there can be no recovery.

5. "Where property, real or personal, is conveyed by a debtor to his creditor with a power to sell and dispose of it, and apply the property to the payment of the debt, the creditor in executing such power becomes the trustee of the debtor, and is bound to act bona fide, and to adopt all reasonable modes of proceeding in order to render the sale most beneficial to the debtor, like any other agent, factor or trustee to sell." Mechanics and Metals National Bank of City of New York v. Pingree, 40 Idaho 118, 128, 232 P. 5, 8.

6. State ex rel. Good v. Platte Valley State Bank of Scottbluff, 130 Neb. 222, 264 N.W. 421.

7. Hopper v. New Jersey Title Guarantee & Trust Co., 127 N.J.Eq. 1, 11 A.2d 60.

8. See also Knox County v. Fourth and First National Bank, 181 Tenn. 569, 182 S.W.2d 980; Collins v. Morgan County National Bank, 226 Ala. 376, 147 So. 161.

9. III Scott, Trusts (1956) § 227.3.

But this is a misconception of the doctrines of equity. If a trust relation were breached, the courts of chancery anciently enforced certain consequences by mandates directed against the person of the trustee. The modern tribunals, which possess equity jurisdiction, have not abdicated that power. And the substitution of a representative of a trustee will not deprive these courts of plenary authority to deal with the situation.

A case in the Supreme Court of Idaho deals with a situation which, while not entirely comparable to that in the case at bar, highly illuminates some of the facets of the latter. Ivie v. W. G. Jenkins and Company, Bankers, 53 Idaho 643, 649-650, 26 P.2d 794, 796. A person gave $1,000.00 to an employee of a bank, with explicit direction to buy an Australian bond. Upon subsequent failure of the bank, no record of the transaction was found; no such bond was in possession, and there was no trace of the money. Recovery against the Commissioner of Finance of the State of Idaho under former statute was allowed as a trust. The court say:

"As heretofore pointed out, cash in excess of the $1,000 belonging to appellant remained in the bank from the time she placed her money there until it failed, and an amount in excess of that belonging to her came into the hands of the commissioner of finance and the liquidating agent. The bank being in possession of money which belonged to it, as well as money which belonged to appellant, will be presumed to have paid out its own money in meeting its obligations rather than that of appellant. Skinner v. Porter, 45 Idaho 530, 263 P. 993, 73 A.L.R. 59. It follows that the sum of money found in the bank's possession by the commissioner of finance and the liquidating agent contains the funds held in trust by it for appellant, and that she is entitled to have her claim for $1,000 classified and paid as directed in I.C.A., § 25-915, subd. 2, which provides:

"'The order of payment of the debts of a bank liquidated by the commissioner shall be as follows: * * *

"'2. All funds held by bank in trust.'"

In the instant case, the Bank was not shown to be insolvent either at the date of the transaction in issue or at the date suit was commenced. Therefore, the court of equity had power to enforce the trust against its general assets at either of these dates. We are of opinion that the Receiver would have been bound by the trust in any event, in accordance with the above quoted authority. But we need not pass upon this point, but treat the case at bar as we find it.

Here the court, upon finding a trust of the personal property, directed the return to the Myhres of all the articles which could be identified. If all of the personal property had still been in the Bank, all would have been returned if the court had found breach of an express trust. Of course, such a court would have equitably required the Myhres to pay their debt to the Bank before a return would have been required. But the apparent position of Receiver is that it is administratively the final authority of allocation of funds and that a federal court has no jurisdiction.

This position might have been well taken if the Myhres had attempted to sue the Receiver after insolvency. But this suit was brought against the Bank and will be considered upon that basis alone. This Court is not therefore concerned with the tracing of trust funds. The situation must be treated as if the decree had been rendered at the date of the filing of the complaint. As above noted, the Idaho statute requires the Receiver to give priority to all funds held in trust. Idaho Code, § 26-915.

The question is what the "decree" of the court would have been at the time the

case was filed before the insolvency intervened, if the same evidence had been presented. As has been seen, a court of chancery could have found a trust and ordered restoration of all the property in specie. If the court found by breach of an express trust the property was dissipated, it could adjudge the value thereof paid in money by the defaulting trustee as the proceeds of the trust property, and the court might in addition have assessed damages for the default. If the trial court had rendered such a "decree" against the Bank itself before insolvency, it would have been binding upon the Receiver. The fact that the actual decree was rendered subsequent to insolvency makes no difference.

Likewise, the voluntary presence of the Receiver in court adds nothing to the situation, except that the court had the power to make the "decree" against it instead of against the Bank. Whether or not this direction to the Receiver was in the "decree" is immaterial, since the Receiver was bound to carry out the direction of the judgment in any event, whether directed against the Bank or against the Receiver as a substitute for the Bank. The court had jurisdiction of the subject matter and personal jurisdiction of the entity, Bank of Idaho. Even if the Myhres could not have brought suit in federal court against the Receiver after it had been substituted for the Bank, the court had authority to enforce the decree against the Bank and against Receiver, as substitute defendant.

The finding of fact of the court was:

"* * * Defendant upon taking possession of Plaintiffs' property involved in this action became a trustee of such property and by reason for (sic) such status and conversion of such property by the Defendant, the judgment granted herein is entitled to a priority as a trust fund."

This finding was fully justified by the evidence against the Bank. It is binding upon the Receiver as substitute for the Bank. Since the court had authority to enforce the decree against the Receiver, in virtue of its voluntary submission thereto, the direction in the judgment was proper.

Affirmed.